**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| VOXTUR ANALYTICS CORP., an Ontario corporation (Canada); APPRAISERS NOW, LTD., an Alberta corporation (Canada) and APPRAISERS NOW US, LLC, a Delaware limited liability company,<br><br>        Plaintiffs,<br><br>v.<br><br>MARTY HALDANE, an individual; AUTOMATIONRE INC., an Alberta corporation (Canada); AUTOMATIONRE (U.S.) INC., a Delaware corporation; DWELLING BLOCKS, LLC., a Delaware limited liability company; VIACHESLAV MEDNIKOV, an individual; RYAN DIAL, an individual; OLENA OVCHARENKO, an individual; and DOES 1 through 10,<br><br>        Defendants. | C.A. No. 25-742-GBW<br><br>**JURY TRIAL DEMANDED** |

**FIRST AMENDED COMPLAINT**

    Plaintiffs Voxtur Analytics Corp. ("Voxtur"), Appraisers Now Ltd ("Anow Canada"), and Appraisers Now US, LLC ("Anow U.S.") (collectively, "Plaintiffs"), by and through their attorneys, hereby allege the following against Defendants Marty Haldane, AutomationRE Inc., AutomationRE (U.S.) Inc., Dwelling Blocks, LLC, Viacheslav Mednikov, Ryan Dial, Olena Ovcharenko, and Does 1-10 (collectively, "Defendants"):

**NATURE OF THE ACTION**

    1.    This is a clearcut case of corporate theft, breach of contracts, copyright infringement, and patent infringement.

2.      Founded in 2011, Anow Canada and Anow U.S. (together, "Anow") have been leaders of the appraisal management software industry, investing considerable expertise and creativity both in developing new and improving existing software.

3.      Anow's appraisal management system is protected by U.S. Copyright Reg. No. TX 9-502-490. Anow's copyrighted material includes, without limitation, code, specifications, documentation, and other content.

4.      Anow's appraisal management system is protected by U.S. Patent No. 11,631,058 (the "'058 Patent" or the "Asserted Patent"), which is generally directed to methods and systems for scheduling real estate appraisal inspections using an automatic selection process that selects an appraisal inspection performer based on geography.

5.      Voxtur acquired Anow Canada from Haldane, amongst others, on March 30, 2021 for $39 million CAD through a Share Purchase Agreement. After the sale, Voxtur employed Haldane in various capacities. While employed by Voxtur, Haldane began the Dwelling Blocks enterprise, including but not limited to creating the Dwelling Blocks website, forming a corporate entity called AutomationRE (U.S.) Inc. that he would then use to enter into contracts with customers for use of the Dwelling Blocks knock-off software, soliciting Plaintiffs' employees, and stealing Plaintiffs' confidential and proprietary source code.

6.      On August 30, 2024, Haldane resigned from Voxtur.  Haldane solicited other of Plaintiffs' employees to work for the Dwelling Blocks enterprise, including Mednikov, Dial, and Ovcharenko, who submitted their resignation to Plaintiffs shortly after Haldane resigned.  Haldane and the other individual Defendants are collectively referred to herein as the "Employee Defendants".

7.  The Employee Defendants together own 100% of voting shares of AutomationRE Inc., which wholly owns AutomationRE (U.S.) Inc., which in turn wholly owns 100% of Dwelling Blocks, LLC.  As a result, the Employee Defendants together own 100% shares of Dwelling Blocks.  Upon information and belief, and as described further below, Dwelling Blocks, LLC, AutomationRE Inc., and AutomationRE (U.S.) Inc. are commingled such that they are operating as one.  Hereinafter, all references to "Dwelling Blocks" includes Dwelling Blocks, LLC, AutomationRE Inc. and Automation RE (U.S.) Inc.

8.  During their employment with Plaintiffs, Employee Defendants had access to the confidential source code for Plaintiffs' copyright protected and proprietary software and Plaintiffs' trade secrets.

9.  Defendants engaged in a scheme to copy Plaintiffs' source code and steal Plaintiffs' trade secrets, without authorization.  Defendants used their illegal copy of Plaintiffs' source code, together with Plaintiffs' trade secrets, to derive, market, offer for sell, and sell their own knock-off appraisal management software platform called Dwelling Blocks (the "Knock-Off Software").  Defendants continue to illegally market, offer for sale, and sell the Knock-Off Software.

10. Furthermore, Defendants have used the Knock-Off Software and the trade secrets they misappropriated from Plaintiffs to gain an unfair market advantage over Plaintiffs and steal Plaintiffs' most valued customer (hereinafter "Anow's Key Customer").

11. Employee Defendants also have violated their contractual obligations owed to Voxtur and Anow Canada.  Plaintiffs have been forced to file this lawsuit to stop Defendants' improper activities.

12. Dwelling Blocks has marketed the Knock-Off Software to Anow's Key Customer, in an attempt to directly and unfairly compete with Plaintiffs.

13.     In this action, Plaintiffs seek to recover damages that they have suffered and prevent the irreparable harm they have faced and continue to face as a result of Defendants' willful infringement and misappropriation of Plaintiffs' valuable intellectual property rights in and to the Anow software.

14.     Defendants' illegal conduct, its willful infringement, and misappropriation leave Plaintiffs with no choice but to file a lawsuit seeking injunctive relief and recovery of damages they have suffered as a result of Defendants' (1) direct and indirect copyright infringement under the Copyright Act; (2) violations of the Digital Millennium Copyright Act; (3) misappropriation of trade secrets under the Defend Trade Secrets Act; (4) direct and indirect patent infringement under the Patent Act; (5) civil conspiracy under Delaware law; (6) breach of fiduciary duties under Delaware law; (7) aiding and abetting breach of fiduciary duties under Delaware law; (8) tortious interference with contracts under Delaware law; (9) tortious interference with business relationships; (10) violations of the Computer Fraud and Abuse Act; (11) breach of contracts under Delaware law; and (12) conversion under Delaware law.

## **PARTIES**

15.     Plaintiff Voxtur Analytics is an Ontario corporation with its principal place of business located at 175 Bloor Street East, South Tower, Suite 1105, Toronto, Ontario, Canada.

16.     Plaintiff Anow Canada is a wholly owned subsidiary of Voxtur.  Anow Canada has a principal place of business located at 543 Ridout Street, London, Ontario, Canada.

17.     Plaintiff Anow U.S. also is a wholly owned subsidiary of Voxtur. Anow U.S. is a Delaware corporation with a principal place of business at 2202 N. Westshore Blvd., Suite 200, Tampa, Florida.

18.     Defendant Dwelling Blocks LLC is a Delaware limited liability company and has designated its registered agent as The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.  Its principal place of business is unknown.

19.     Defendant AutomationRE Inc. is a Canadian company formed in Alberta, Canada with a principal place of business at 1500-850 2 ST SW, Calgary, Alberta, Canada.

20.     Defendant AutomationRE (U.S.) Inc. is a Delaware corporation with a principal place of business at 223 Plantation Club Drive, Lahaina, Hawaii and has designated its registered agent as The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

21.     Defendant Haldane is an individual residing at 223 Plantation Club Drive, Lahaina, Hawaii.

22.     Defendant Mednikov is an individual residing at 86 Ingram Close, Red Deer, Alberta, Canada.

23.     Defendant Dial is an individual residing at 25 Clark Crescent, Red Deer, Alberta, Canada.

24.     Defendant Ovcharenko is an individual residing at 82-70 Fiddlers Green Road London, Ontario, Canada.

25.     Defendants DOES 1-10 are additional former employees of Anow that Haldane solicited to work for Dwelling Blocks, or who otherwise left Anow to work for Dwelling Blocks, and/or who misappropriated Plaintiffs' intellectual property and trade secrets.

## JURISDICTION AND VENUE

26.     This action arises under the Copyright Act of 1976, 17 U.S.C. § 101, *et seq.*, and 17 U.S.C. §§ 1201*, et seq.*; the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836; the Patent

Laws of the United States, 35 U.S.C. §§ 1, *et seq*., including §§ 271, 281, 284, and 285; the Computer Fraud and Abuse Act, 18 U.S.C. § 1030; Anti-counterfeiting laws, 18 U.S.C. § 2318; and Delaware state law. This Court has jurisdiction over the state law claims pursuant to 28 U.S.C. §§ 1331, 1338 and 1367, because the state claims are so related to Plaintiffs' claims under Federal law that they form part of the same case or controversy and derive from a common nucleus of operative facts.

27.    This court has personal jurisdiction over Dwelling Blocks LLC because, for among other reasons, it is a Delaware LLC and has designated its registered agent as The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801. This court has personal jurisdiction over AutomationRE (U.S.) Inc. because, for among other reasons, it is a Delaware corporation and has designated its registered agent as The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801. On information and belief, AutomationRE (U.S.) Inc. enters into contracts with customers for the use of the Knock-Off Software. This court has personal jurisdiction over Employee Defendants because together they own 100% of voting shares in AutomationRE Inc., which wholly owns AutomationRE (U.S.) Inc., a Delaware entity. This court has personal jurisdiction over AutomationRE Inc., an Alberta (Canada) entity, because on information and belief, the Employee Defendants own and are employees of AutomationRE Inc., which wholly owns AutomationRE (U.S.) Inc., which wholly owns Dwelling Blocks, LLC. Plaintiffs' injuries arise from or relate to the Employee Defendants' misconduct and AutomationRE (U.S.) Inc.'s contracts for use of the Knock-Off Software. This court has personal jurisdiction over all Defendants because each of Defendant's contacts with the District of Delaware was continuous and systematic. Defendants caused tortious injury to Plaintiffs in this district by participating in their scheme to willfully

infringe intellectual property rights of Anow U.S., a Delaware company, including by stealing and using Plaintiffs' trade secrets, copyrights, and patent and otherwise causing tortious injury to Plaintiffs. Defendants did so with knowledge that Anow U.S. was a Delaware company. Further, Defendants have performed intentional acts expressly aimed at Anow U.S. in this district and thereby caused damage that they knew would be suffered by Anow U.S. in this district. In addition, Defendants have offered infringing software for sale in Delaware, and, upon information and belief, transacted other business within Delaware.

28.    Venue is proper in this district under 28 U.S.C. §§ 1391, because Defendants committed acts here in furtherance of their illegal business operations. A substantial part of the events giving rise to the claims occurred in this district, and a substantial part of the property that is the subject of this action is located within this district. Further, Defendants have either sold or offered to sell the infringing software at issue in this district and/or knowing such software would be sold into this district. Defendants' acts of infringement are likely to have caused, and to continue to cause, harm to Plaintiffs, including Anow U.S., which is incorporated in and a resident of this district.

29.    Venue also is proper in this district under 28 U.S.C. § 1400(a), because Defendants are subject to personal jurisdiction here due to having performed intentional acts expressly aimed at this district and thereby having caused damage that they knew would be suffered by Plaintiff Anow U.S. in this district.

## FACTUAL ALLEGATIONS

### Anow's Technology and Software

30.    Anow's technology drives digitization and modernization within the valuation space. By simplifying and streamlining complex workflows and automating manual processes

with a modular approach that can be optimized for any application, Anow is quickly becoming the industry standard for management of appraisal work flows.

31.     Anow offers SaaS-based products for both lenders and appraisers. The Anow Appraiser product is a subscription-based business management and workflow tool for appraisers and analysts to manage valuation orders, employees, scheduling, accounting, client communication, and reporting. This mobile-optimized solution allows appraisers to increase returns immediately by delivering more orders in less time. The Anow Lender product is a transaction-based appraisal management solution that connects directly to the lender's loan origination system (LOS) and uses a rules-based engine to route appraisal orders directly to appraisers and appraisal management companies for fulfillment and deliver completed reports back to the lender's LOS upon completion.

32.     Voxtur is a real estate technology company that is redefining industry standards in a dynamic lending environment. It offers targeted data analytics to simplify tax solutions and property valuation and settlement services throughout the lending lifecycle for investors, lenders, government agencies and servicers.  Voxtur's proprietary data hub and workflow platforms more accurately and efficiently value assets, originate and service loans, securitize portfolios and evaluate tax assessments.  Voxtur serves the property lending and property tax sectors, both public and private, mainly in the United States and Canada.

33.     Haldane founded Anow Canada in 2011, which developed what is known today as the Anow SaaS Appraisal Product (the "Anow Appraisal Management Platform").  Voxtur acquired Anow Canada, including the Anow Appraisal Management Platform, from Haldane on March 30, 2021 in a Share Purchase Agreement.  Voxtur later formed Anow U.S. on July 29, 2021.

34.     The Anow Appraisal Management Platform has become one of Plaintiffs' flagship products. It provides an automated appraisal workflow management platform for the global appraisal market. Appraisers use the Anow Appraisal Management Platform to manage orders, clients, and fees with its dedicated consumer relationship management software.  The Anow Appraisal Management Platform appraiser-first model benefits all value-chain participants, from lenders to consumers.  Anow has completed millions of appraisals, with billions in fees collected that were billable to Anow's clients.  Subscribers of the Anow Appraisal Management Platform are located in the United States, Canada, Australia, Mexico and New Zealand.  The Anow Appraisal Management Platform has been used in 60-plus countries.

35.     Anow has significantly impacted the way companies across the world manage appraisals.  Appraisers using Anow's software on the Anow Appraisal Management Platform are able to deliver full appraisals on any form in 24 to 48 hours through a whole suite of workflow automation and availability tools that include an automated property inspection booking process with homeowners and realtors. And a real-time GPS availability beacon instantly sends an appraiser to a nearby property for an inspection within minutes of a lender ordering a valuation. In 2020, HousingWire selected Anow as the Tech100 winner for its highly regarded reputation and growth as a software leader.

36.     Anow's Key Customer is one of the largest mortgage lenders in the United States.

37.     Anow's innovations are reflected in Anow U.S.'s copyright registration and Anow Canada's patent issued by the United States Patent and Trademark Office.

38.     Anow U.S.'s software is protected by a valid and duly issued U.S. Copyright Registration, TX-9-502-490 for the Registered Work, Anow Appraiser Direct – 2021-11-09 Release.  A true and correct copy of this Copyright Registration is attached hereto as **Exhibit A**.

39.     On September 13, 2019, Anow Canada, listing Haldane as the sole inventor, filed a non-provisional patent application (U.S. Application 17/808,606) claiming priority to U.S. Application 16/570,498, which claimed priority to Provisional Patent Application 62/731,648, to protect aspects of the Anow Appraisal Management Program.  U.S. Application 17/808,606 later issued as the '058 Patent.  Anow Canada owns the '058 Patent. A true and correct copy of the '058 Patent is attached hereto as **Exhibit B**.

**Plaintiffs' Trade Secrets**

40.     Plaintiffs' business operations involve the use of highly confidential, non-public information, including, but not limited to:

    a.   Confidential business strategies and methods;

    b.   Confidential appraisal processes and strategies;

    c.   Confidential software developments and improvements;

    d.   Confidential work product and creative assets;

    e.   Confidential pricing data;

    f.   Confidential client files;

    g.   Confidential financial data;

    h.   Confidential sales pitches to potential clients and current clients in an effort to solicit business;

    i.   Confidential contract terms and templates;

    j.   Confidential methods, techniques, processes, and procedures; and

    k.   All such similar information necessary for Plaintiff to conduct its business in a competitive marketplace.

(Anow's confidential information, described above, is referred to herein as Plaintiffs' "Trade Secrets").

41.    Plaintiffs are the owners of the Trade Secrets.

42.    The Trade Secrets derive independent economic value from not being generally known or readily ascertainable by proper means by the public, and Plaintiffs take reasonable steps to preserve the secrecy of their Trade Secrets.

43.    Plaintiffs restrict access to their Trade Secrets with a variety of protocols.

44.    Plaintiffs do not make their Trade Secrets public.

45.    Plaintiffs' Trade Secrets are highly valuable to competitors of Plaintiffs, who could use such confidential and proprietary information to unfairly compete with Plaintiffs.

46.    Plaintiffs have taken and continue to take reasonable measures to keep their Trade Secrets secret and confidential.  Plaintiffs utilize secure, password protected document management, document storage and computer network services provided by Auth0, GitHub, and other similar third-party services. Plaintiffs incorporate these security measures as part of their internal computer network, which is connected to the internet, where their internal files and Trade Secrets are stored in a cloud-based secure storage system, which further is linked to all computers used by Plaintiffs through the internet ("Plaintiffs' Protected Network"). Plaintiffs use their Trade Secrets in interstate commerce.

47.    On information and belief, during their employment, Employee Defendants intentionally accessed Plaintiffs' Protected Network and downloaded Plaintiffs' Trade Secrets from Plaintiffs' Protected Network to Employee Defendants' personal computers, electronic devices, and/or portable storage devices, which include, but are not limited to, external hard drives,

flash drives, thumb drives, cloud storage, and/or USB devices (collectively "Employee Defendants' Electronic Devices") without authorization to download such files.

48.    On information and belief, after Employee Defendants downloaded the aforementioned files, they intentionally and knowingly deleted traces of their illegal downloads from Plaintiffs' Protected Network.

49.    After Employee Defendants' employment with Plaintiffs ended, Plaintiffs disabled their login credentials for Plaintiffs' Protected Network so the Employee Defendants could no longer access files and information from Plaintiffs' Protected Network.

50.    Plaintiffs are informed, and therefore believe, that some of the files that Employee Defendants downloaded to the Employee Defendants' Electronic Devices contain Plaintiffs' Trade Secrets.

51.    Plaintiffs are informed, and therefore believe, that Employee Defendants have unlawfully used and are using Plaintiffs' Trade Secrets for their own benefit and the benefit of Dwelling Blocks.

52.    Further, upon leaving Plaintiffs' employment, Dial took and still has not returned Plaintiffs' computer.  The computer contains Plaintiffs' Trade Secrets.

**The Share Purchase Agreement and Related Non-Compete, Non-Solicitation, and Confidentiality Agreement**

53.    On March 30, 2021, Voxtur purchased Anow Canada from Haldane and other owners for $39 million CAD through a Share Purchase Agreement ("SPA").  Voxtur later formed Anow U.S. on July 29, 2021.

54.    Section 7.4 of the SPA contains a Confidentiality provision, which states in part:

From and after the Closing, the Sellers shall, and shall cause their Affiliates to, hold, and shall use its reasonable best efforts to cause their respective representatives to hold, in confidence any and all information, whether written or

oral, concerning the Company, except to the extent that the Sellers can show that such information: (a) is generally available to, and known by, the public through no fault of the Sellers, any of their Affiliates or any of their respective representatives; or (b) is lawfully acquired by the Sellers, any of their Affiliates or any of their respective representatives from sources that are not prohibited from disclosing such information by a legal, contractual or fiduciary obligation.

55.     On April 8, 2021, Haldane signed a Non-Competition, Non-Solicitation, and Confidentiality Agreement ("Restrictive Agreement to the SPA") with Voxtur as a required covenant to the SPA.  By signing this agreement, Haldane agreed that he (1) would not compete for a period of 5 years, in the territory of U.S, and Canada, in the business of developing and licensing software and technological tools for appraisals and the real estate industry; (2) would not solicit customers during the Restricted Period of 5 years; (3) would not solicit any employees without Plaintiffs' written consent; and (4) would keep Confidential Information confidential.

56.     Section 8.2 of the SPA contains an indemnity provision, which imposes an indemnity obligation on Haldane if he fails to perform or fulfill any of the covenants under the SPA.  As alleged above, the Restrictive Agreement to the SPA is a material covenant under the SPA.

**The Asserted Patent**

57.     Anow Canada is the owner of every right, title, and interest in and to the '058 Patent.  The '058 Patent is valid and enforceable, and the invention claimed in the '058 Patent was novel, non-obvious, unconventional, and non-routine as of September 14, 2018, the filing date of the patent application leading to the issuance of the '058 Patent.

58.     The '058 Patent, entitled, "Systems and methods for scheduling appraisals using automatic appraiser selection based on geography," was duly and legally issued to inventor Marty Haldane on April 18, 2023.  On September 3, 2019, Marty Haldane assigned his rights to the '058

Patent to Anow Canada. Anow Canada owns the entire right, title, and interest in and to the '058 Patent and is entitled to sue for infringement of the '058 Patent.

## Overview of the Invention

59.     The '058 Patent is generally directed to methods and systems for scheduling real estate appraisal inspections using an automatic selection process that selects an appraisal inspection performer based on geography. The Background of the Asserted Patent describes conventional appraisal processes of finding and scheduling an appraiser. The Asserted Patent describes and claims particular technical solutions that overcome the disadvantages of conventional methods by functionally illustrating how the arrangement of additional elements interact with other networked devices to derive values, transmit notifications, prompt the selected appraiser to accept the assigned inspection, and in response to receiving an acceptance, update records of the scheduled match to execute the claimed methodology specifically applicable to the unique nature of mobile devices.

60.     The inventions described and claimed in the '058 Patent provide several benefits over conventional technologies, as described below.

61.     The inventions claimed in the '058 Patent provide solutions to problems that are unique to the environment of networked devices. For example, the centralized management solution communicates with multiple systems to streamline and automatically schedule real estate appraisal inspections using an automatic selection process that selects an appraisal inspection performer based on geography. It also provides solutions for resolving competing claims of exclusivity by appraisers, allowing geographic exclusivity to be further divided among other dimensions, including based on proximity information, acceptance rate, and time.

62.     The Anow Appraisal Management Platform is a commercial embodiment of and practices one or more of the '058 Patent's claims.

### The Employment Agreements

63.     On December 6, 2016, Mednikov and Anow Canada executed an employment agreement.

64.     Mednikov was hired as a software developer until he resigned from Anow Canada on September 3, 2024.  Mednikov's employment agreement contains provisions protecting Anow Canada's Trade Secrets in Section 5 and provisions protecting Anow Canada's intellectual property in Section 6.  Further, Section 6.6 to the employment agreement provides that Mednikov must assign any Company Work to Anow Canada:

> The Employee agrees to promptly disclose and describe to the Company all Company Work. The Employee agrees to assign to the Company or the Company's designee all the Employee's right, title and interest in and to any and all Company Work. To the extent any of the rights, title and interest in and to Company Work cannot be assigned by the Employee to the Company, the Employee hereby grants to the Company an exclusive, royalty-free, transferable, irrevocable, worldwide license (with rights to sublicense through multiple tiers of sub-licensees) to practice such non-assignable rights, title and interest. To the extent any of the rights, title and interest in and to Company Innovations can neither be assigned nor licensed by the Employee to the Company, the Employee hereby irrevocably waives and agrees never to assert such non-assignable and nonlicensable rights, title and interest against the Company or any of the Company's successors in interest. This provision shall not apply to any Work that (a) do not relate, at the time of conception, reduction to practice, creation, derivation, development or making of such Work to the Company's business or actual or demonstrably anticipated research, development or business; and (b) were developed entirely on the Employee's own time; and (c) were developed without the use of any Company's equipment, supplies, facilities or trade secret information; and (d) did not result from any work the Employee performed for the Company.

65.     Mednikov's employment agreement defines Work as "all discoveries, designs, developments, improvements, inventions (whether or not protectable under patent laws), trade

secrets, know-how, ideas (whether or not protectable under trade secret laws) …and all materials and source code [.]"

66.     Mednikov's employment agreement also contains non-compete and non-solicitation provisions in Section 7.  By accepting employment with Anow Canada, Mednikov agreed that any breach of the material provisions in Sections 5-7 would result in irreparable harm to Anow Canada, an injunction is the only effective remedy, and that Anow Canada is not required to post a bond for an injunction.

67.     On April 24, 2018, Dial and Anow Canada executed an employment agreement.

68.     Anow Canada hired Dial as a software developer until he resigned on August 30, 2024.  Dial's employment agreement also contains provisions protecting Anow Canada's Trade Secrets in Section 5 and intellectual property in Section 6.  Section 6.6 provides:

> The Employee agrees to promptly disclose and describe to the Company all Company Work. The Employee agrees to assign to the Company or the Company's designee all the Employee's right, title and interest in and to any and all Company Work. To the extent any of the rights, title and interest in and to Company Work cannot be assigned by the Employee to the Company, the Employee hereby grants to the Company an exclusive, royalty-free, transferable, irrevocable, worldwide license (with rights to sublicense through multiple tiers of sub-licensees) to practice such non-assignable rights, title and interest. To the extent any of the rights, title and interest in and to Company Innovations can neither be assigned nor licensed by the Employee to the Company, the Employee hereby irrevocably waives and agrees never to assert such non-assignable and nonlicensable rights, title and interest against the Company or any of the Company's successors in interest. This provision shall not apply to any Work that (a) do not relate, at the time of conception, reduction to practice, creation, derivation, development or making of such Work to the Company's business or actual or demonstrably anticipated research, development or business; and (b) were developed entirely on the Employee's own time; and (c) were developed without the use of any Company's equipment, supplies, facilities or trade secret information; and (d) did not result from any work the Employee performed for the Company.

69.     Dial's employment agreement also contains non-compete and non-solicitation provisions in Section 7.  By accepting employment with Anow Canada, Dial also agreed that any

breach of these material provisions would result in irreparable harm to Anow Canada, an injunction is the only effective remedy, and Anow Canada is not required to post a bond for an injunction.

70.    On April 8, 2021, Haldane and Voxtur executed an employment agreement for the position of President of Anow Division.  Haldane was laid off on May 27, 2022, and this employment agreement terminated at that time.  Haldane's 2021 employment agreement is not at issue in this case.

71.    On January 22, 2022, Ovcharenko and Anow Canada executed an employment agreement for the position of junior front-end developer until she resigned on November 1, 2024.

72.    Ovcharenko reported directly to Mednikov.  Ovcharenko's employment agreement contains provisions protecting Plaintiffs' Trade Secrets in Section 6.   It also contains provisions protecting Plaintiffs' intellectual property in Section 7.  Section 7(c) provides, in part:

> Further, the parties hereby acknowledge and agree that all materials produced for [Plaintiffs], or in any way contributed to [Plaintiffs], by the Employee, including all proofs, drafts, prior versions or derivations thereof prepared by, or with the assistance of, the Employee, whether prior to, during or subsequent to the Effective Date, shall be works made for hire ("Works Made for Hire").  Ownership of, and all right, title and interest relating to, copyrights, patents, and all other intellectual property rights associated with the Works Made for Hire shall belong to and shall be the sole and exclusive property of [Plaintiffs], as the case may be.

73.    By accepting employment with Anow Canada, Ovcharenko agreed that a breach of this agreement would cause Plaintiffs irreparable harm.

74.    Voxtur rehired Haldane as a Special Advisor to the Chief Executive Officer ("CEO"), and his employment agreement for this position went into effect on December 1, 2023. While he was hired by Voxtur, his paystubs were issued by Anow U.S. given his United States residence.

75.     Haldane's employment agreement contains provisions protecting Plaintiffs' Trade Secrets in Section 5.  It also contains provisions protecting Plaintiffs' intellectual property in Section 6.  Section 7(d) provides, in part:

> Further, the parties hereby acknowledge and agree that all materials produced for [Plaintiffs], or in any way contributed to [Plaintiffs], by the Employee, including all proofs, drafts, prior versions or derivations thereof prepared by, or with the assistance of, the Employee, whether prior to, during or subsequent to the Effective Date, shall be works made for hire ("Works Made for Hire").  Ownership of, and all right, title and interest relating to, copyrights, patents, and all other intellectual property rights associated with the Works Made for Hire shall belong to and shall be the sole and exclusive property of [Plaintiffs], as the case may be.

76.     By accepting employment with Voxtur, Haldane agreed that a breach of this agreement would cause Plaintiffs irreparable harm.

77.     On January 23, 2024, Haldane emailed Voxtur's general counsel and requested that Plaintiffs change his job title for his visa application to work in the United States.  He stated: "I think there is confusion about my role all around anyways," and he requested Voxtur to change his job title to "Head of Valuation Technology since that is technically what I am overseeing now." Voxtur changed his job title, and, from then on, Haldane was Head of Valuation Technology in addition to Advisor to the CEO.  Haldane resigned from Voxtur on August 30, 2024.

78.     Each of the Employee Defendant's employment agreements require, without limitation, that each Employee Defendant must promptly disclose any discoveries, ideas, inventions, works, or authorships, improvements, methods, processes, or legally recognized proprietary rights (including but not limited to patents, copyrights, trademarks, know-how and trade secrets) and all records and copies of records that relate to Plaintiffs or result or derive from their employment with Voxtur or Anow Canada, in whole or in part, solely or in collaboration with others.

79.    The Employee Defendants acknowledged and agreed to Anow's company policies and Voxtur's corporate policies protecting Plaintiffs' intellectual property.

**Voxtur Announces a Sale Process with BMO Capital Markets**

80.    Around June 2024, Voxtur began considering the sale of Anow to a Confidential Third Party Company (whose name Voxtur agreed not to disclose under an NDA), and it informed Employee Defendants of the same.

81.    On January 14, 2025, Voxtur publicly announced it had started a sale process with BMO capital markets to enhance stakeholder value.

82.    On April 2, 2025, the Confidential Third Party Company and Voxtur executed a non-binding letter of intent ("LOI") for the sale of Anow for millions of dollars following the Confidential Third Party Company's completion of its due diligence.  The Confidential Third Party Company began conducting due diligence pursuant to the LOI, which was anticipated to be completed within three weeks.

83.    During the due diligence period, on April 20, 2025, the Confidential Third Party Company informed Plaintiffs that it found concerning information regarding Dwelling Blocks. The Confidential Third Party Company stated that it had "reason to believe Dwelling Blocks has heavily copied a substantial amount of exact Anow Code."

84.    The next day, on April 21, 2025, the Confidential Third Party Company retracted its proposal and informed Voxtur that it was no longer interested in pursuing the transaction under the current terms.

**Plaintiffs Learn About Dwelling Blocks' and Employee Defendants' Scheme**

85.    On February 14, 2025, Anow's Key Customer inadvertently sent Mednikov an email to his former Anow email address.  On information and belief, Anow's Key Customer

intended to send the email to Mednikov's Dwelling Blocks email address. This email shows that Mednikov was dealing with Anow's Key Customer at his new employer (through Dwelling Blocks), in violation of his employment agreement and restrictive covenants.

86.     Plaintiffs conducted preliminary research and found that Dwelling Blocks, LLC was formed in Delaware on January 1, 2025.  Plaintiffs also discovered that all Employee Defendants have Dwelling Blocks email addresses.

87.     Plaintiffs also inspected the Dwelling Blocks website.  Plaintiffs found that the login pages for Dwelling Blocks' portal are identical in method and views to Anow's portal, and that the Dwelling Blocks platform is substantially similar to Anow's platform.

88.     Through further investigation, Plaintiffs discovered that the Dwelling Blocks website has been functioning since at least **January 2024**, while all Employee Defendants were still employed by either Voxtur or Anow Canada.

89.     Indeed, the Dwelling Blocks website was developed while the Employee Defendants were still working for Voxtur or Anow Canada.

90.     On March 26, 2025, Anow's Key Customer inadvertently copied the CEO of Voxtur, Ryan Marshall, on email correspondence that was intended for Dial at Dwelling Blocks (both of their first names are Ryan).  Haldane and Mednikov were also copied on that email. This email is further evidence that Employee Defendants were dealing with Anow's Key Customer in violation of their employment agreements and restrictive covenants.

91.     Employee Defendants' scheme to steal Plaintiffs' intellectual property and Trade Secrets for the benefit of Dwelling Blocks and its affiliates became apparent.

92.     On April 15, 2025, Anow's Key Customer sent its appraisal network email correspondence that stated it was adding Dwelling Blocks as an appraisal management platform, in addition to Anow.

93.     On April 15, 2025, the Assistant Vice President of Operations at Anow's Key Customer met with several of Plaintiffs' employees for a regularly scheduled meeting. Plaintiffs' employees asked him about the email that day advertising Dwelling Blocks.  He confirmed Anow's Key Customer's business relationship with Dwelling Blocks.

94.     Between April 15, 2025 and April 23, 2025, business dealings with Anow's Key Customer rapidly and significantly declined.  Employee Defendants have been, and still are, intentionally diverting business from Anow to Dwelling Blocks, in violation of their employment agreements and restrictive covenants.

95.     Since April 15, 2025, when Anow's Key Customer announced its business with Dwelling Blocks, Anow's Key Customer's use of the Anow Appraisal Management Platform has declined even further.

96.     On or around July 1, 2025, Anow's Key Customer ceased using the Anow Appraisal Management Platform and is exclusively using Dwelling Blocks.

**Haldane Founded Dwelling Blocks to Capitalize on Anow's Technology and Success**

97.     Haldane is a former President, Special Advisor to the CEO, and Head of Valuation Technologies at Voxtur.  As a senior Voxtur employee, Haldane had access to a wide array of Plaintiffs' Trade Secrets and confidential information, including Plaintiffs' protocols and source code, and he played a significant role in developing the Anow Appraisal Management Platform and in Plaintiffs' technical organization.

98.     On June 3, 2024, Haldane formed AutomationRE (US) Inc.  AutomationRE (U.S.) Inc. has no website.

99.     Before resigning from Voxtur, around July 2024, Haldane demanded that Voxtur agree to a "Consulting Agreement" that would have required Plaintiffs to waive any rights to work performed on the Anow software for Anow's Key Customer. Voxtur refused to sign the Consulting Agreement.

100.    Shortly after Voxtur refused to sign the Consulting Agreement, Haldane resigned and took Mednikov, Dial, and Ovcharenko with him.  They all resigned from around September 2024, some within days of each other.

101.    On information and belief, the Employee Defendants began creating software for Dwelling Blocks by copying Anow's source code without authorization and by copying a derivation of that code around January 2024.  At that time, all Employee Defendants had access to this proprietary code only by virtue of their work for Plaintiffs, but they did not have authorization to use the confidential source code on the Internet or to create new software derived from it, especially for a new competing company they intended to form.

102.    On information and belief, the Employee Defendants acted in concert with each other to conduct a scheme to steal copyrighted source code from Anow U.S. and Plaintiffs' Trade Secrets for their own personal financial gain at Dwelling Blocks.

103.    Defendants then directly copied and/or used multiple copyright protected portions from the stolen source code to derive Defendants' Knock-Off Software.  The portions of source code that Defendants misappropriated include and incorporate Plaintiffs' Trade Secrets.

104.   The Anow software that Defendants copied contained Anow U.S. copyright headers indicating authorship and ownership information, reflecting Anow's copyright in and ownership of this code.

105.   Plaintiffs are informed and believe that Defendants removed this information from the Knock-Off Software that they released through Dwelling Blocks.

106.   Dwelling Blocks' Knock-Off Software is and has been marketed, offered for sale, and/or sold to Anow's customer(s) in direct competition with Plaintiffs.  Indeed, Anow's Key Customer has completely replaced Anow with Dwelling Blocks and, on information and belief, is now solely using Dwelling Blocks' Knock-Off Software through a contract with AutomationRE (U.S.) Inc.

107.   It would have been extremely difficult, if not impossible, for the Employee Defendants to develop the Knock-Off Software in the short time that they did so without stealing Anow U.S.'s source code.  In particular, it would have been impossible for Defendants to develop the Knock-Off Software in the short time between September 2024 (the approximate date of their resignations) and January 2025 (the approximate date of Dwelling Blocks LLC's incorporation).

**Voxtur Sends Haldane Cease-and-Desist Letters Regarding
Defendants' Illegal Activities**

108.   Plaintiffs have diligently tried to resolve the issues complained of herein before seeking relief from the Court.

109.   First, after investigating and confirming Defendants' intellectual property theft, on March 31, 2025, Voxtur sent a cease-and-desist letter to Haldane regarding the illegal activities described above.

110.   On April 2, 2025, Haldane responded to Voxtur's cease-and-desist letter, stating that his employment agreement superseded the Restrictive Agreement to the SPA.  However, the

provisions in his employment agreement only covered the scope of his employment and did not supersede the Restrictive Agreement to the SPA as claimed.

111.    On April 17, 2025, Voxtur responded to Haldane stating that the Restrictive Agreement to the SPA is in full force and effect, and that Haldane is in breach of the agreement, as well as his employment agreement.

112.    Haldane responded to Voxtur on April 22, 2025 reiterating his positions that he is not in breach and that Defendants will continue their illegal activities.

113.    After realizing that Defendants would not comply with Plaintiffs' demand, and would continue unfairly competing with Plaintiffs through their misappropriation and illegal use of Plaintiffs' valuable intellectual property, Plaintiffs promptly registered the copyright in their software and filed this suit.

## **VEIL PIERCING/ALTER EGO**

114.    Plaintiffs repeat and reallege each and every allegation above as if fully set forth herein.

115.    The allegations in this section are asserted on information and belief.

116.    At all times material to the allegations in this Complaint, Employee Defendants completely dominated and controlled Dwelling Blocks, LLC through ownership of AutomationRE Inc. and AutomationRE (U.S.) Inc., such that all three entities were mere instrumentalities and alter egos of the Employee Defendants.  The Employee Defendants also completely dominated and controlled the actions of Dwelling Blocks, LLC.

117.    Dwelling Blocks, LLC is a shell company, which Plaintiffs suspect was formed for the purposes of hiding funds and transferring assets among Dwelling Blocks, LLC, AutomationRE Inc., and Automation RE (U.S.) Inc.  As stated above in the introduction, entitled "Nature of the

Action", any reference to Dwelling Blocks herein includes Dwelling Blocks, LLC, AutomationRE Inc. and Automation RE (U.S.) Inc.

118.    Decisions regarding Dwelling Blocks were made solely for the personal business interests of the Employee Defendants.  Decisions regarding Dwelling Blocks were made solely by the Employee Defendants without regard for the interests of the limited liability company or its creditors.

119.    The Employee Defendants were aware of and controlled the activities of everyone who conducted any work for and supported Dwelling Blocks.

120.    Neither Dwelling Blocks LLC nor AutomationRE (US) Inc. has a principal place of business or an office space.

121.    Dwelling Blocks LLC has failed to observe the necessary limited liability company formalities required by Delaware law and its own operating agreement.  Plaintiffs suspect that funds and other assets of Dwelling Blocks LLC have been commingled with the personal funds and assets of the Employee Defendants, or with the funds and assets of other entities controlled by any of the Employee Defendants, including but not limited to AutomationRE (US) Inc. and AutomationRE Inc.

122.    Dwelling Blocks has failed to maintain separate bank accounts, financial records, or other indicia of corporate separateness from the Employee Defendants.

123.    Dwelling Blocks has failed to hold regular member or manager meetings, or keep minutes of any such meetings, as required by its operating agreement or customary business practices.

124.    Dwelling Blocks was formed and operated with insufficient capital to meet its reasonably anticipated liabilities and obligations, particularly those owed to Voxtur and Anow

Canada. The Employee Defendants siphoned off assets from Dwelling Blocks, rendering it unable to satisfy its debts.

125. AutomationRE (U.S.) Inc. has failed to observe the necessary corporate formalities required by Delaware law and its own operating agreement. Plaintiffs suspect that funds and other assets of AutomationRE (U.S.) Inc. have been commingled with the personal funds and assets of the Employee Defendants, or with the funds and assets of other entities controlled by any of the Employee Defendants, including but not limited to Dwelling Blocks, LLC. and AutomationRE Inc.

126. AutomationRE (U.S.) Inc. has failed to maintain separate bank accounts, financial records, or other indicia of corporate separateness from the Employee Defendants.

127. AutomationRE (U.S.) Inc. has failed to hold regular member or shareholder meetings, or keep minutes of any such meetings, as required by its operating agreement or customary business practices.

128. AutomationRE (U.S.) Inc. was formed and operated with insufficient capital to meet its reasonably anticipated liabilities and obligations, particularly those owed to Voxtur and Anow Canada. The Employee Defendants siphoned off assets from AutomationRE (U.S.) Inc., rendering it unable to satisfy its debts.

129. AutomationRE Inc. has failed to observe the necessary corporate formalities required by its own operating agreement. Plaintiffs suspect that funds and other assets of AutomationRE Inc. have been commingled with the personal funds and assets of the Employee Defendants, or with the funds and assets of other entities controlled by any of the Employee Defendants, including but not limited to AutomationRE (US) Inc. and Dwelling Blocks, LLC.

130.    AutomationRE Inc. has failed to maintain separate bank accounts, financial records, or other indicia of corporate separateness from the Employee Defendants.

131.    AutomationRE Inc. has failed to hold regular member or shareholder meetings, or keep minutes of any such meetings, as required by its operating agreement or customary business practices.

132.    AutomationRE Inc. was formed and operated with insufficient capital to meet its reasonably anticipated liabilities and obligations, particularly those owed to Voxtur and Anow Canada.  The Employee Defendants siphoned off assets from AutomationRE Inc., rendering it unable to satisfy its debts.

133.    AutomationRE (U.S.) Inc. entered into significant contracts or undertook substantial projects with Anow's Key Customer without adequate financial resources, indicating an intent to rely on the corporate shield to avoid genuine financial risks.

134.    Adherence to the fiction of Dwelling Blocks', AutomationRE Inc.'s, and/or AutomationRE (U.S.) Inc.'s separate corporate existence would sanction fraud or promote injustice against Plaintiffs.

135.    Employee Defendants used Dwelling Blocks, AutomationRE Inc., and/or AutomationRE (U.S.) Inc. to avoid a legal obligation to Plaintiffs, resulting in unjust enrichment of the Employee Defendants at Plaintiffs' expense.

136.    Allowing the Employee Defendants to escape liability would create an inequitable result and would be contrary to public policy.

## FIRST CAUSE OF ACTION

**Direct and Indirect Copyright Infringement under the Copyright Act**

*17 U.S.C. § 101 et seq.*

**(By Anow U.S. Against All Defendants)**

137.    Plaintiffs repeat and reallege each and every allegation above as if fully set forth herein.

138.    Anow U.S.'s copyrighted software contains a substantial amount of original material (including without limitation, code, specifications, documentation, and other materials) that is copyrightable subject matter under the Copyright Act, 17 U.S.C. §§ 101, et seq.  Anow U.S. owns valid copyrights in Anow Appraiser Direct – 2021-11-09 Release, including but not limited to U.S. Copyright Reg. No. TX 9-502-490.

139.    The copyrighted work is an original, creative work and copyrightable subject matter under the copyright laws of the United States.

140.    Anow U.S. is the owner of a valid copyright in the Work, and the Register of Copyrights has issued with valid Certificates of Registration as indicated in **Exhibit A**.

141.    Anow U.S. has complied in all respects with 17 U.S.C. §§ 101 et seq., and it has secured the exclusive rights and privileges in and to the copyright in the Anow Appraiser Direct – 2021-11-09 Release software.

142.    By their actions, alleged above, Defendants have infringed and will continue to infringe, Anow U.S.'s copyright in and relating to the Anow Appraiser Direct – 2021-11-09 Release software, by, *inter alia*, reproducing, distributing and creating derivative work based on the Work without any authorization or permission from Anow U.S.

Defendants copied Anow U.S.'s copyrighted material and/or substantial portions of Plaintiff's copyrighted material.

143.    Dwelling Blocks' Knock-Off Software's dashboard filters look substantially similar to Anow U.S.'s dashboard filters, as shown below:



144.    Dwelling Blocks' Knock-Off Software's dashboard categories are substantially similar to Anow U.S. dashboard categories, as shown below:



145.    Dwelling Blocks' Knock-Off Software's new user creation page is substantially similar to Anow U.S. new user creation page, as shown below:



146.    Dwelling Blocks' Knock-Off Software's user settings page is similar to the Anow

U.S. user settings page, as shown below:



147.    Dwelling  Blocks'  Knock-Off  Software's  Add  New  License  page  looks substantially similar to Anow U.S.'s Add New License page, as shown below:



148.     Dwelling Blocks' Knock-Off Software's add coverage page is substantially similar to Anow U.S.'s add coverage page, as shown below:



149.     On information and belief, Employee Defendants copied Anow U.S.'s copyrighted source code for Anow Appraiser Direct – 2021-11-09 Release, created a derivative work of that code, and released it to the market, including by publishing it through Defendants' website.

150.     On information and belief, Haldane encouraged and induced Employee Defendants and Dwelling Blocks to create this derivative of Anow U.S.'s copyrighted source code for

Dwelling Blocks' Knock-Off Software.  On information and belief, Employee Defendants did so with knowledge that Dwelling Blocks' Knock-Off Software was an unlicensed derivative of Anow U.S.'s source code.  On information and belief, each new version of Dwelling Blocks Knock-Off Software has included copies of this unlicensed derivative of Anow U.S.'s copyrighted source code, and/or further derivatives thereof.

151.    When Defendants' Knock-Off Software is executed, further unlicensed copies of Anow U.S.'s  copyrighted source code are created.

152.    Defendants' infringement related to the Anow Appraiser Direct – 2021-11-09 Release source code includes at least:

        a.    Direct and contributory infringement of Anow U.S.'s exclusive right to reproduce its copyrighted works pursuant to 17 U.S.C. § 106(1);

        b.    Direct and contributory infringement of Anow U.S.'s exclusive right to prepare derivative works based on copyrighted works pursuant to 17 U.S.C. § 106(2);

        c.    Direct and contributory infringement of Anow U.S.'s exclusive right to distribute copies of its copyrighted works pursuant to 17 U.S.C. § 106(3).

153.    Defendants' infringement has been and continues to be deliberate, willful, and in utter disregard of Anow U.S.'s rights.

154.    Defendants will continue to infringe and contribute to infringement of Anow U.S.'s copyright in Anow Appraiser Direct – 2021-11-09 Release source code and derivatives thereof, causing irreparable harm to Anow U.S. for which there is no adequate remedy at law, unless enjoined by this Court.  Defendants' infringement has caused and continues to cause irreparable harm to Anow U.S. in the form of loss of business opportunities, lost sales, loss of market share,

loss of goodwill, and the loss of Anow U.S.'s exclusive rights to reproduce its copyrighted works, prepare derivative works based on its copyrighted works, and distribute copies of its copyrighted works.

155.    As a direct and proximate result of Defendants' wrongful conduct, Defendants have obtained benefits to which they are not entitled.

156.    As a direct and proximate result of Defendants' wrongful conduct, Anow U.S. has been substantially and irreparably harmed in an amount not readily capable of determination. Unless restrained by this Court, Defendants will cause further irreparable injury to Anow U.S.

157.    Anow U.S. is entitled to injunctive relief enjoining Defendants, its agents and employees, and all persons acting in concert or participation with it from engaging in any further infringement of Anow U.S.'s copyrighted Anow Appraiser Direct – 2021-11-09 Release software.

158.    Anow U.S. is further entitled to recover from Defendants the damages, including attorney's fees and costs, it has sustained and will sustain, and any gains, profits and advantages obtained by Defendants as a result of its acts of infringement as alleged above. At present, the amount of such damages, gains, profits, and advantages cannot be fully ascertained by Anow U.S., but will be established according to proof at trial.  Anow U.S. also is entitled to recover statutory damages for Defendants' willful infringement of its copyright.

## SECOND CAUSE OF ACTION

### Violations of the Digital Millennium Copyright Act

### *17 U.S.C. §§ 1201*, et seq.

### (By Anow U.S. Against All Defendants)

159.    Plaintiffs repeat and reallege each and every allegation above as if fully set forth herein.

160.    Defendants violated the Digital Millennium Copyright Act ("DMCA") by knowingly providing and distributing copyright management information ("CMI") that is false, with the intent to induce, enable, facilitate, or conceal copyright infringement, in violation of 17 U.S.C. § 1202(a)(1)-(2).

161.    Defendants violated the DMCA by, without the authority of Anow U.S., intentionally removing or altering CMI and distributing Anow U.S. source code and Anow U.S.-derived source code with removed or altered CMI, knowing that it had been removed or altered without the authority of Anow U.S., and knowing or having reasonable grounds to know that it would induce, enable, facilitate, or conceal an infringement, in violation of 17 U.S.C. § 1202(b)(1)-(3).

162.    The copied Anow U.S. source code is protected by a U.S. Copyright Registration, as set forth above.

163.    As described above, Defendants created the Dwelling Blocks Knock-Off Software by copying copyrighted Anow U.S. source code, which contained Anow U.S. copyright headers indicating authorship and ownership information reflecting Anow U.S.'s copyright in this code. However, Plaintiffs are informed and believe that the Knock-Off Software's derivative code did not include headers indicating Anow U.S.'s authorship and ownership of the copyright in the Dwelling Blocks code; Defendants therefore provided false CMI and intentionally removed or altered CMI in creating the Dwelling Blocks code, without the authority of Anow U.S.

164.    Anow U.S. employs many technological measures to effectively control access to its copyright-protected software, including, but not limited to, software password protections.

165.    Defendants distributed the Knock-Off Software containing false, removed, and altered CMI for the entire duration of time that they maintained the Dwelling Blocks source code

repository online. Any time the Knock-Off Software's source code repository was accessed, Defendants distributed code containing this false, removed, and altered CMI.

166.    On information and belief, Defendants knowingly and intentionally removed or altered the CMI and knowingly and intentionally provided and distributed code containing false CMI, knowing that the CMI was removed or altered without the authority of Anow U.S., and knowing and intending to induce, enable, facilitate, or conceal copyright infringement.

167.    Defendants' actions, as described above, constitute direct circumvention of technical protection measures in the Anow Appraiser Direct – 2021-11-09 Release software that effectively control access to a copyrighted work, in violation of 17 U.S.C. § 1201(a)(1) and (2). Dwelling Blocks manufactures, offers to the public, provides, and otherwise traffics in software and information that it markets and provides for use in circumventing these technological measures.

168.    Defendants will continue to violate the DMCA, causing irreparable harm to Anow U.S. for which there is no adequate remedy at law, unless enjoined by this Court. Defendants' violations of the DMCA have caused and continue to cause irreparable harm to Anow U.S. in the form of loss of business opportunities, lost sales, loss of market share, and loss of goodwill.

### THIRD CAUSE OF ACTION

**Misappropriation Under the Defend Trade Secrets Act**

*18 U.S.C. § 1836*

**(By Plaintiffs Against All Defendants)**

169.    Plaintiffs repeat and reallege each and every allegation above as if fully set forth herein.

170.    Plaintiffs are the owners and possessors of certain valuable Trade Secrets, including their proprietary information contained in and relating to the Anow Appraisal Management Platform.  These Trade Secrets are related to Anow's services that are used in or intended for use in interstate or foreign commerce.

171.    Employee Defendants were in possession of the foregoing Trade Secrets subject to agreements in which they expressly acknowledged and confirmed the confidential nature of these Trade Secrets.

172.    Other than through Defendants' improper disclosure, the Trade Secrets are not known to the public and are not readily ascertainable by proper means to persons who could derive value from their disclosure or use.

173.    Plaintiffs have taken reasonable steps to maintain the secrecy of their Trade Secrets, including by requiring confidentiality and/or nondisclosure agreements to be signed by any party granted access to the Trade Secrets.  These confidential and proprietary Trade Secrets are of substantial economic value and have conferred a competitive advantage on Anow.  Indeed, the Trade Secrets are valuable because they are not generally known or readily accessed, acquired or duplicated, through proper means, to others who can profit from their use without authority or permission.

174.    Defendants have and continually will misappropriate Plaintiffs' Trade Secrets by using these Trade Secrets, without authority or permission, in the Dwelling Blocks Knock-Off Software.  In particular, Dwelling Blocks' Knock-Off Software is intended to substitute for Anow U.S.'s software in such a way that requires use of Plaintiffs' Trade Secrets.  By doing so, Defendants have used Plaintiffs' proprietary Trade Secrets without permission and in violation of their confidentiality obligations.

175.    Defendants' misappropriation comprises acts, including, without limitation, use of Plaintiffs' Trade Secrets, on or after the date of the enactment of the Defend Trade Secrets Act.

176.    Defendants' current and continued misappropriation of Plaintiffs' Trade Secrets is reckless, malicious, deliberate and willful. Defendants know of the confidentiality, ownership, and use restrictions on the Trade Secrets, as the Employee Defendants agreed to abide by in signing their confidentiality/employment agreements.

177.    Plaintiffs have been damaged by Defendants' conduct in an amount to be proven at trial.

178.    As a result of Defendants' current and continued misappropriation of Plaintiffs' Trade Secrets, Plaintiffs will suffer imminent and irreparable harm.

179.    Plaintiffs have no adequate remedy at law.  Unless enjoined by this Court, Defendants' acts of misappropriation will continue and Plaintiffs will continue to suffer irreparable harm.

## FOURTH CAUSE OF ACTION

### Direct and Indirect Patent Infringement

### *35 U.S.C. § 271*

### (By Anow Canada Against Dwelling Blocks LLC, AutomationRE Inc. and Automation RE (U.S.) Inc.)

180.    Plaintiffs repeat and reallege each and every allegation above as if fully set forth herein.

181.    Defendants have infringed, contributorily infringed, and/or induced infringement of one or more claims of the '058 Patent by making, using, selling, offering for sale, or importing into the United States, or by intending that others make, use, import into, offer for sale, or sell in

the United States, methods and/or products using methods covered by one or more claims of the '058 Patent.

182.    Upon information and belief, Defendants' products and services that infringe one or more claims of the '058 Patent include at least, but are not limited to, the Knock-Off Software, which was released to and made available on the DwellingBlocks.com website.  The product listed is exemplary, and Anow Canada will be able to provide a more comprehensive list after discovery.

183.    For example, upon information and belief, one or more accused products infringe at least claim 1 of the '058 Patent, which describes a patented method.  Defendants make, use, sell, offer for sale, import, export, supply, or distribute within the United States one or more accused product and thus directly infringe one or more claims of the '058 patent.

184.    Defendants indirectly infringe one or more claims of the '058 Patent as provided by 35 U.S.C. § 271(b) by inducing direct infringement by others, such as end-user customers in this District and throughout the United States.  For example, direct infringement occurs as a result of activities performed by manufacturers, resellers, or operators/carriers of mobile devices which use the accused product, who, upon information and belief, perform each step of the claimed invention as directed by Defendants.   Upon information and belief, Defendants' customers, including in this district, also use the claimed invention when they use Defendants accused product.  Defendants knew that their activities would induce others to infringe the '058 Patent.  Defendants received actual notice of the '058 Patent at least as early as the filing of this Complaint.

185.    Defendants contributorily infringe one or more claims of the '058 Patent as provided by 35 U.S.C. § 271(c) contributing to the infringement by others, such as manufacturers, resellers, and end-user customers in this District and throughout the United States. The accused product has no substantial non-infringing uses and is a material part of the claimed invention.

186.    On information and belief, Defendants' products and services, specifically including the Knock-off Software, directly infringe the '058 Patent because they include a computer-implemented method for collaboratively scheduling an appraisal inspection via an interactive interface that is distributed over a plurality of remote devices, the method being performed by a computer system, the method comprising: comprising receiving, from a first instance of the interactive interface operating on a user device connected to the computer system, and via an interaction with a user associated with the user device, including as demonstrated in the images below.



https://dwellingblocks.com/ [hereinafter Example Image 1.1]



https://dwellingblocks.com/ [hereinafter Example Image 1.2]



[https://dwellingblocks.freshdesk.com/support/solutions](https://dwellingblocks.freshdesk.com/support/solutions) [hereinafter Example Image 1.3]



https://dwellingblocks.freshdesk.com/support/solutions/articles/157000002799-new-companies-getting-started-guide-your-first-5-steps [hereinafter Example Image 1.4]



https://dwellingblocks.freshdesk.com/support/solutions/articles/157000002799-new-companies-getting-started-guide-your-first-5-steps [hereinafter Example Image 1.5]



https://dwellingblocks.freshdesk.com/support/solutions/articles/157000240092-first-steps-for-appraiser-or-inspection-vendors-added-to-a-company-account    [hereinafter

Example Image 1.6]



https://dwellingblocks.freshdesk.com/support/solutions/articles/157000240092-first-steps-for-appraiser-or-inspection-vendors-added-to-a-company-account    [hereinafter Example Image 1.7]



https://dwellingblocks.freshdesk.com/support/solutions/articles/157000005401-main-navigation-assignment-overview [hereinafter Example Image 1.8]



https://dwellingblocks.freshdesk.com/support/solutions/articles/157000005401-main-navigation-assignment-overview  [hereinafter Example Image 1.9]



https://dwellingblocks.freshdesk.com/support/solutions/articles/157000003253-completing-an-assignment-in-dwelling-blocks-step-by-step-guide [hereinafter Example Image 1.10]



https://dwellingblocks.freshdesk.com/support/solutions/articles/157000003253-completing-an-assignment-in-dwelling-blocks-step-by-step-guide [hereinafter Example Image 1.11]



https://dwellingblocks.freshdesk.com/support/solutions/articles/157000003253-completing-an-assignment-in-dwelling-blocks-step-by-step-guide [hereinafter Example Image 1.12]



https://dwellingblocks.freshdesk.com/support/solutions/articles/157000003253-completing-an-assignment-in-dwelling-blocks-step-by-step-guide [hereinafter Example Image 1.13]



https://dwellingblocks.freshdesk.com/support/solutions/articles/157000003253-completing-an-assignment-in-dwelling-blocks-step-by-step-guide [hereinafter Example Image 1.14]



By following these steps and utilizing these tools, you'll ensure a seamless process for completing assignments efficiently and effectively.

**For other assignment additional features refer to article.**

Thank you for your dedication to providing high-quality service through Dwelling Blocks!

https://dwellingblocks.freshdesk.com/support/solutions/articles/157000003253-completing-an-assignment-in-dwelling-blocks-step-by-step-guide [hereinafter Example Image 1.15]



https://dwellingblocks.freshdesk.com/support/solutions/articles/157000170353-accepting-new-assignments [hereinafter Example Image 1.16]



https://dwellingblocks.freshdesk.com/support/solutions/articles/157000170353-accepting-new-assignments [hereinafter Example Image 1.17]



https://dwellingblocks.freshdesk.com/support/solutions/articles/157000170353-accepting-new-assignments [hereinafter Example Image 1.18]



https://dwellingblocks.freshdesk.com/support/solutions/articles/157000309178-vendor-dashboard-overview [hereinafter Example Image 1.19]



https://dwellingblocks.freshdesk.com/support/solutions/articles/157000309178-vendor-dashboard-overview [hereinafter Example Image 1.20]



https://dwellingblocks.freshdesk.com/support/solutions/articles/157000002810-coverage-areas [hereinafter Example Image 1.21]



https://dwellingblocks.freshdesk.com/support/solutions/articles/157000360101-how-to-connect-to-the-lender-panel-and-receive-orders [hereinafter Example Image 1.22]



https://dwellingblocks.freshdesk.com/support/solutions/articles/157000354376-assignment-features [hereinafter Example Image 1.23]



https://dwellingblocks.freshdesk.com/support/solutions/articles/157000005274-vacation-mode [hereinafter Example Image 1.24]

Disabling Vacation Mode

When the vendor is ready to take on new assignments again:

1. **Return to User Profile**:
    - Go back to the **User Profile**.
2. **Disable Vacation Mode:**
    - Click the **three dots button** in the top right corner again.
    - Select **Turn Off Vacation Mode to reactivate the vendor for new assignments.**



Activating and deactivating Vacation Mode allows vendors to manage their availability easily, ensuring that they only receive assignments when they are ready to work.

https://dwellingblocks.freshdesk.com/support/solutions/articles/157000005274-vacation-mode [hereinafter Example Image 1.25]



https://dwellingblocks.freshdesk.com/support/solutions/articles/157000002812-how-to-update-your-profile-information [hereinafter Example Image 1.26]

2. **Use the "Update" Button**

- You can also click the **Update** button in the top right corner of the Details card.
- This will allow you to edit all your information at once.
- After making changes, click **Update user details** to confirm.



https://dwellingblocks.freshdesk.com/support/solutions/articles/157000002812-how-to-update-your-profile-information [hereinafter Example Image 1.27]

## Why Each Item Is Important

- **Phone Number:**
  It is very important to add your phone number! This allows lenders to contact you directly with offers or important updates. Without a phone number, you might miss out on opportunities or urgent notifications.
- **Address:**
  Adding your address helps ensure you are correctly assigned to the right location or service area. This makes the process smoother and more accurate for everyone involved.
- **Capacity:**
  Setting your capacity is essential! Without this information, lenders will not know that you are available.
- **Other Details:**
  Make sure your name, email are also up to date for the best experience.

## Quick Tips

- Review your profile regularly.
- Double-check your phone number and address for accuracy.
- Update your details as soon as they change.

**Remember:**
Each item on your profile is very important. Keeping your information up to date helps you get the best service and ensures you never miss an important offer or update!

https://dwellingblocks.freshdesk.com/support/solutions/articles/157000002812-how-to-update-your-profile-information [hereinafter Example Image 1.28]



https://app.dwellingblocks.com/assignments/all [hereinafter Example Image 1.29]



https://app.dwellingblocks.com/users/12942/details [hereinafter Example Image 1.30]



https://app.dwellingblocks.com/users/12942/details [hereinafter Example Image 1.31]

187.    On information and belief, Defendants' products and services, specifically including the accused products, include a method comprising a location of a real estate property to be appraised, including as demonstrated in Example Images 1.1-1.31, *supra*.

188.    On information and belief, Defendants' products and services, specifically including the accused product, include a method comprising a request to automatically assign an appraiser for an inspection of the real estate property; including as demonstrated in Example Images 1.1-1.31, *supra*.

189.    On information and belief, Defendants' products and services, specifically including the accused product, include a method comprising accessing a database of the computer

system, the database including records that, for each a plurality of appraisers; including as demonstrated in Example Images 1.1-1.31, *supra*.

190.    On information and belief, Defendants' products and services, specifically including the accused product, include a method comprising location information for the appraiser, the location information including one or more of a current location associated with the appraiser or locations and times of existing inspection appointments for the appraiser; including as demonstrated in Example Images 1.1-1.31, *supra*.

191.    On information and belief, Defendants' products and services, specifically including the accused product, include a method comprising availability information for the appraiser; including as demonstrated in Example Images 1.1-1.31, *supra*.

192.    On information and belief, Defendants' products and services, specifically including the accused product, include a method comprising an acceptance rate at which the appraiser accepts a new appraisal; including as demonstrated in Example Images 1.1-1.31, *supra*.

193.    On information and belief, Defendants' products and services, specifically including the accused product, include a method comprising an overdue percentage associated with the appraiser; including as demonstrated in Example Images 1.1-1.31, *supra*.

194.    On information and belief, Defendants' products and services, specifically including the accused product, include a method comprising for each of the plurality of appraisers; including as demonstrated in Example Images 1.1-1.31, *supra*.

195.    On information and belief, Defendants' products and services, specifically including the accused product, include a method comprising determining, based on the location information and the availability information, proximity information associated with a proximity between the location of the real estate property to be appraised and one or more locations the

appraiser is at or scheduled to be at during a period of time at which the appraiser has availability; including as demonstrated in Example Images 1.1-1.31, *supra*.

196.    On information and belief, Defendants' products and services, specifically including the accused product, include a method comprising generating an assignment index value based on a weighted combination of the proximity information, the acceptance rate, and the overdue percentage; including as demonstrated in Example Images 1.1-1.31, *supra*.

197.    On information and belief, Defendants' products and services, specifically including the accused product, include a method comprising selecting, based on a comparison of the assignment indexes of the plurality of appraisers, (i) an appraiser from the plurality of appraisers to inspect the real estate property, and (ii) a time for the inspection of the real estate property; including as demonstrated in Example Images 1.1-1.31, *supra* .

198.    On information and belief, Defendants' products and services, specifically including the accused product, include a method comprising a transmitting a notification to a second instance of the interactive interface operating on an appraiser device associated with the selected appraiser, the notification configured to cause the second instance of the interactive interface to output the time for the inspection, the location of the real estate property, and an interactive prompt for the selected appraiser to accept the inspection; including as demonstrated in Example Images 1.1-1.31, *supra*.

199.    On information and belief, Defendants' products and services, specifically including the accused product, include a method comprising in response to receiving, from the second instance of the interactive interface, an acceptance of the inspection by the selected appraiser, updating the database with data associating the inspection with the selected appraiser; including as demonstrated in Example Images 1.1-1.31, *supra*.

200.    By engaging in the conduct described herein, Defendants have injured Anow Canada and are thus liable for infringement of one or more claims of the '058 Patent, pursuant to 35 U.S.C. § 271. Defendants have committed these acts of infringement without license or authorization.  To the extent any element is not found literally, upon information and belief, it is satisfied by the doctrine of equivalents.

201.    As a result of Defendants' infringement of one or more claims of the '058 Patent, Anow Canada has suffered monetary damages and is entitled to a monetary judgment in an amount adequate to compensate for Defendants' past infringement, together with interests and costs.  In addition, Defendants' infringement is causing irreparable harm and monetary damage to Anow Canada and will continue to do so unless and until Defendants are enjoined by the Court.

## FIFTH CAUSE OF ACTION

### Civil Conspiracy

### (By Plaintiffs Against All Defendants)

202.    Plaintiffs repeat and reallege each and every allegation above as if fully set forth herein.

203.    The elements for conspiracy under Delaware are: (1) a confederation or combination of two or more persons; (2) an unlawful act done in furtherance of the conspiracy; and (3) damages resulting from the action of the parties to the conspiracy. *AeroGlobal Capital Mgmt., LLC v. Cirrus Indus.*, 871 A.2d 428, 437 n.8 (Del. 2005); *Nicolet, Inc. v. Nutt*, 525 A.2d 146, 149-50 (Del. 1987).

204.    Defendants conspired and agreed among themselves to engage in the unlawful and tortious conduct described above, deliberately engaged in such conduct in furtherance of their unlawful plan or scheme, acted on behalf of the other defendant at all relevant times, knowingly

accepted the illicit benefits of the conspiracy, and knowingly participated in, profited from, and/or ratified the misconduct of the other conspirators.

205.    As a result, each defendant is liable for the conduct of the other defendant and the other participants in the conspiracy, pursuant to common law.

206.    Plaintiffs have suffered and will continue to suffer injury and irreparable harm as a result, for which Plaintiffs have no adequate remedy at law.

## SIXTH CAUSE OF ACTION

### Breach of Fiduciary Duties

### (By Voxtur Against Haldane)

207.    Plaintiffs repeat and reallege each and every allegation above as if fully set forth herein.

208.    Haldane executed the SPA and the Restrictive Agreement to the SPA which reflect his fiduciary duties to Voxtur.

209.    Further, Haldane was at all relevant times an employee of Voxtur with management authority.  He held the official title of "Advisor to the CEO" and assumed the position of "Head of Valuation Technology" on January 23, 2024, approximately one month after he was rehired.

210.    As Advisor to the CEO and Head of Valuation Technology, Haldane owed, and continues to owe, to Voxtur and its stockholders and members, fundamental fiduciary duties, including but not limited to, the duty of loyalty and the duty of care.

211.    The duty of loyalty requires fiduciaries to act in the best interests of Voxtur and its stockholders/members, free from self-interest and conflicts.  It prohibits fiduciaries from using their position to gain a personal advantage at the expense of Voxtur's stockholders/members, or from taking corporate opportunities for themselves. It also includes the duty of good faith.

212.     The duty of care requires fiduciaries to act with the care that an ordinarily prudent person in a like position would use under similar circumstances. This includes a duty to be reasonably informed about the decisions they make and the business affairs of Voxtur.

213.     Voxtur's operating agreement does not eliminate or restrict the traditional fiduciary duties owed by managers or members.

214.     Haldane's duties to Voxtur and its stockholders/members was not extinguished when his employment ended, as he owed a fiduciary duty not to take confidential information acquired through his employment with Voxtur and use it to compete against Voxtur.

215.     Haldane breached his fiduciary duties of loyalty and care to Voxtur by, among other things: (1) learning of a valuable business opportunity with Anow's Key Customer, which was within Voxtur's line of business and which Voxtur, through Anow, was financially capable of pursuing.  Instead of presenting this opportunity to Voxtur, Haldane diverted it for his own personal benefit or for the benefit of Dwelling Blocks, AutomationRE (U.S.) Inc., and/or AutomationRE Inc.; (2) concealing his development of a competing software; (3) stealing Voxtur's and Anow Canada's employees; (4) stealing Anow's Key Customer; (5) stealing Anow U.S.'s software and Plaintiffs' source code; and (6) misusing confidential information entrusted to him for the purposes of advancing Voxtur's interests and instead using that confidential information belonging to Voxtur for the purposes of advancing Dwelling Blocks', AutomationRE (U.S.) Inc.'s, AutomationRE Inc.'s, and/or his own interest, including after his employment with Voxtur ended.

216.     Haldane's breaches are ongoing and continue to substantially harm Voxtur and its legitimate business interests.

217. Haldane's acts, omissions, and breaches of fiduciary duty were not taken in good faith, were not in the best interests of Voxtur or its stockholders/members, and/or constituted gross negligence or a conscious disregard of known duties.

218. As a direct and proximate result of Haldane's breaches of fiduciary duty, Voxtur and its stockholders/members, have suffered significant damages in an amount to be proven at trial, but believed to be in excess of $30 million.

219. Haldane's conduct was willful, wanton, and malicious, warranting an award of punitive damages.

220. Voxtur has no adequate remedy at law.

### SEVENTH CAUSE OF ACTION

**Aiding and Abetting Breach of Fiduciary Duties**

**(By Voxtur and Anow Canada Against Dwelling Blocks LLC, AutomationRE Inc. and Automation RE (U.S.) Inc.)**

221. Plaintiffs repeat and reallege each and every allegation above as if fully set forth herein.

222. As employees of Voxtur and Anow Canada, Employee Defendants owed and continued to owe basic duties of care, loyalty, and good faith to them.  Their duties include obligations to discharge their actions in good faith.

223. The Employee Defendants together own 100% of voting shares of AutomationRE Inc., which wholly owns AutomationRE (U.S.) Inc., which in turn wholly owns 100% of Dwelling Blocks, LLC.  As a result, the Employee Defendants together own 100% shares of Dwelling Blocks.  Since each of these entities is owned and operated by Employee Defendants, Dwelling Blocks LLC, AutomationRE (U.S.) Inc., and AutomationRE Inc. were aware of these duties and obligations.

224.    Despite their employees' duties of loyalty, Dwelling Blocks LLC, AutomationRE Inc. and Automation RE (U.S.) Inc. have aided and abetted, and continue to aid and abet, Haldane to breach his fiduciary duties of loyalty and good faith by, among other things, stealing Anow U.S. source code to create competing software, disclosing and using Anow Canada's technology and Plaintiffs' Trade Secrets for purposes expressly prohibited by those agreements.

225.    Dwelling Blocks LLC, AutomationRE Inc. and Automation RE (U.S.) Inc.'s actions in aiding and abetting these breaches of fiduciary duty were and are intentional, illegal, and have been engaged in for the specific purpose of aiding and abetting Haldane to breach his fiduciary duties to Voxtur.

226.    As a proximate result of Dwelling Blocks LLC, AutomationRE Inc. and Automation RE (U.S.) Inc.'s aiding and abetting of breach of fiduciary duty, Voxtur and Anow Canada have been damaged, and Dwelling Blocks LLC, AutomationRE Inc. and Automation RE (U.S.) Inc. have been unjustly enriched, in an amount to be determined at trial.

## EIGHTH CAUSE OF ACTION

### Tortious Interference with Contracts

### (By Plaintiffs Against All Defendants)

227.    Plaintiffs repeat and reallege each and every allegation above as if fully set forth herein.

228.    As discussed above, each Employee Defendant executed an agreement with either Voxtur or Anow Canada to protect Plaintiffs' Trade Secrets and intellectual property.  They also agreed not to compete, solicit employees, and/or solicit customers for a period of one year after their termination.

229.    Haldane also signed the Restrictive Agreement to the SPA which required him not to compete with Plaintiffs for five years, or to solicit Plaintiffs' customers or employees until at least April 8, 2026.

230.    The Employee Defendants were also aware that Anow U.S. has a Master SaaS Agreement with Anow's Key Customer in which Anow U.S. licensed its software.

231.    Plaintiffs fulfilled all of their obligations pursuant to the agreements described above.

232.    As Dwelling Blocks LLC, AutomationRE (U.S.) Inc., and AutomationRE Inc. is owned and operated by Employee Defendants, Defendants were aware of these agreements.

233.    Despite the agreements described above, Defendants have induced and continue to induce, each other to breach their contractual responsibilities by working in concert to create a substantially similar software for Dwelling Blocks' website and disclosing and using Anow Canada's technology, Anow U.S.'s software, and Plaintiffs' Trade Secrets for purposes expressly prohibited by those agreements.

234.    Despite the agreements described above, Defendants have induced and continue to induce Anow's Key Customer to breach its agreement with Anow U.S. by diverting business from Anow U.S. and causing its customer to use Anow U.S.'s software in manner that is prohibited by the agreement.

235.    Defendants' actions in inducing these breaches of contract were and are intentional, unjustified, illegal, and have been engaged in for the specific purpose of inducing breach of the agreements described above.

236.     As a proximate result of Defendants' tortious interference with contract, Plaintiffs have been damaged, and have suffered actual damages such as financial loss of business opportunities; and Defendants have been unjustly enriched, in an amount to be determined at trial.

## NINTH CAUSE OF ACTION

### Tortious Interference with Business Relationships

### (By Plaintiffs Against All Defendants)

237.     Plaintiffs repeat and reallege each and every allegation above as if fully set forth herein.

238.     Defendants knew the identity of Anow's current and potential customers, including Anow's Key Customer.

239.     Employee Defendants worked intimately with Anow's Key Customer during their employment with Voxtur and Anow Canada.

240.     Defendants were also aware of Voxtur started a sale process with BMO capital markets to enhance stakeholder value.

241.     On information and belief, while still employed with Voxtur and Anow Canada, Employee Defendants solicited business from Anow's customers, including Anow's Key Customer, and implemented a scheme to divert Anow's business to Dwelling Blocks's website, while intentionally concealing these actions from Plaintiff.

242.     Unbeknownst to Plaintiffs, they are informed, and therefore believe, that the Employee Defendants began instructing at least Anow's Key Customer not to conduct or substantially decrease business with Anow U.S. and to instead divert future business to Dwelling Blocks, AutomationRE (U.S.) Inc., and/or AutomationRE Inc.

243.    Additionally, the Employee Defendants exploited their position and intimate access to Anow U.S.'s and Anow Canada's intellectual property and Plaintiffs' Trade Secrets to divert customers to Dwelling Blocks or its affiliates without Plaintiffs' knowledge.

244.    Dwelling Blocks LLC, AutomationRE Inc. and Automation RE (U.S.) Inc. which are controlled, operated, and/or managed by Employee Defendants, were each aware through the Employee Defendants, that Voxtur had started a sale process with BMO capital markets to enhance stakeholder value and knew that Anow's Key Customer would be vital to the terms of any sale. Dwelling Blocks and its affiliates also knew that a sale process would be impacted if not terminated due to their theft of Plaintiffs' Trade Secrets, Anow U.S.'s software, and Anow Canada's patent.

245.    Defendants intentionally interfered with Voxtur's opportunity to sell Anow to the Confidential Third Party Company or any third party through conduct that was independently wrongful, including stealing Anow U.S.'s and Anow Canada's intellectual property, stealing Anow's Key Customer, organizing a scheme with each other to execute these illegal acts, and breaching their agreements with Voxtur and Anow Canada.

246.    Defendants' intentional and independently wrongful interference was the proximate cause of Voxtur's failure to secure a transaction with the Confidential Third Party Company.  Indeed, the Confidential Third Party Company told Voxtur that the deal was off immediately upon learning that Dwelling Blocks substantially copied Anow's software.

247.    As a direct and proximate result of Defendants' tortious interference, Plaintiffs have suffered significant damages, including but not limited to lost profits, loss of goodwill, and harm to its business reputation, in an amount to be proven at trial, but believed to exceed $23 million.

## TENTH CAUSE OF ACTION

**Violation of the Computer Fraud and Abuse Act**

*18 U.S.C. § 1030*

**(By Plaintiffs Against the Employee Defendants)**

248.    Plaintiffs repeat and reallege each and every allegation above as if fully set forth herein.

249.    Plaintiffs' Protected Network and the computer that Dial failed to return to Plaintiffs are "protected computers" within the meaning of 18 U.S.C. § 1030(e)(2).

250.    During their employment with Voxtur and Anow Canada, Employee Defendants intentionally accessed Plaintiffs' Protected Network and downloaded files to their Employee Defendants' Electronic Devices, which were the property of Plaintiffs from Plaintiffs' Protected Network, without authorization to download such files.

251.    After each Employee Defendant's employment ended, their log-in credentials to Plaintiffs' Protected Network were disabled by Voxtur and Anow Canada, so that they could no longer have access to files and information from Plaintiffs' Protected Network.

252.    Auth0 and/or GitHub, through Plaintiffs' Protected Network, has a feature that allows users to send a link to a file or files from Plaintiffs' Protected Network to external email addresses to allow users that do not otherwise have access to Plaintiffs' Protected Network to view and/or download such files from Plaintiffs' Protected Network.

253.    Plaintiffs are informed, and therefore believe, that while Employee Defendants were employed with Voxtur and Anow Canada, they sent themselves links to files that were the property of Plaintiffs, that they sent such files to email addresses they personally controlled, from Plaintiffs' Protected Network, that would allow them to view and download files from Plaintiffs'

Protected Network once their employment with Voxtur and Anow Canada ended and their login credentials to Plaintiffs' Protected Network were disabled.

254.    Dial also failed to return his computer after his resignation.  The computer contained Plaintiffs' confidential information, including its Trade Secrets.

255.    The files Employee Defendants obtained from the above-alleged acts and conduct include valuable information relating to Plaintiffs' business operations which are extremely valuable to Plaintiffs.

256.    Upon information and belief, Defendants benefited from Employee Defendants' unauthorized access and use of Plaintiffs' Protected Network and Dial's computer.

257.    Without the issuance of a temporary restraining order and preliminary injunction by this Court against Defendants pursuant to 18 U.S.C. 1030 (g), there is a likelihood of irreparable harm to Plaintiffs, because Defendants will continue to obtain information from Plaintiffs' Protected Network and the computer wrongfully possessed by Dial.

258.    As a direct and proximate result of the wrongful conduct alleged hereinabove, Plaintiffs have incurred damages in an amount to be proven at trial.

## ELEVENTH CAUSE OF ACTION

### Breach of Contract

### *The SPA and the Restrictive Agreement to the SPA*

### (By Voxtur Against Haldane)

259.    Plaintiffs repeat and reallege each and every allegation above as if fully set forth herein.

260.    Voxtur and Haldane, amongst others, entered into a valid contract in the form of a SPA.

261.    Since the SPA was executed on March 30, 2021, Haldane was bound by the Restrictive Agreement to the SPA, until at least April 8, 2026.

262.    Haldane breached the terms of the SPA by, *inter alia*, owning and operating Dwelling Blocks LLC and AutomationRE (U.S.) Inc. in Delaware, and/or their affiliates, which directly compete with Anow, during the restrictive period in the SPA.

263.    Haldane breached the terms of the SPA by, *inter alia*, soliciting Plaintiffs' employees and clients, and failing to keep Anow's Trade Secrets confidential.

264.    Since the Restrictive Agreement to the SPA was entered into on April 8, 2021, Haldane was bound by the SPA until at least April 8, 2026.

265.    Voxtur has satisfied any and all conditions precedent and has performed all of its obligations required by the SPA.

266.    Voxtur has suffered an injury as an actual and proximate cause of Haldane's breach of the terms of the SPA.

267.    Voxtur is therefore entitled to Judgment against Haldane in an amount to be determined at trial.

268.    Voxtur is also entitled to specific performance of the Indemnity provision in the SPA, which requires Haldane to indemnify Voxtur in the event of a breach of a material provision to the SPA.

## TWELFTH CAUSE OF ACTION

**Breach of Contracts**

*The Employment Agreements and Company Policies*

**(By Voxtur and Anow Canada Against Employee Defendants)**

269.    Plaintiffs repeat and reallege each and every allegation above as if fully set forth herein.

270.    Employee Defendants entered into valid contracts in the form of employment agreements with Voxtur and Anow Canada.

271.    Employee Defendants' obligations under their Employment Agreements relating to Plaintiffs' Trade Secrets and their obligations relating to Intellectual Property survive their termination.

272.    Employee Defendants (except for Haldane) were bound by non-solicitation and non-compete provisions in their employment agreements for a period of one year after their termination.

273.    Employee Defendants have breached the terms of their employment agreements by engaging in the business of Dwelling Blocks and its affiliates.

274.    Voxtur and Anow Canada have satisfied any and all conditions precedent and have performed all of their obligations required by the employment agreements.

275.    Voxtur and Anow Canada are therefore entitled to Judgment against Employee Defendants in an amount to be proven at trial.

276.    Voxtur and Anow Canada are also entitled to assignment of Employee Defendants' Works prepared for Dwelling Blocks and its affiliates pursuant to their employment agreements,

as Dwelling Blocks' platform and software is a derivative work of Plaintiffs' intellectual property and Trade Secrets.

## THIRTEENTH CAUSE OF ACTION

### Conversion

### (By Plaintiffs Against Dial)

277.    Plaintiffs repeat and reallege each and every allegation above as if fully set forth herein.

278.    Dial failed to return Plaintiffs' laptop after he resigned.

279.    Dial is in wrongful possession of Plaintiffs' documents and other property, which contain Plaintiffs' Trade Secrets and other confidential and proprietary information.

280.    Dial has wrongfully asserted dominion or control over Plaintiffs' property in a manner inconsistent with Plaintiffs' exclusive ownership and entitlement to such property.

281.    As a direct and proximate result of Dial's possession of their property, Plaintiffs have suffered and will continue to suffer damages and irreparable harm.

282.    Plaintiffs have no adequate remedy at all because Dial's actions are affecting their goodwill, reputation, and ability to compete at a highly competitive marketplace.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this court enter judgment against Defendants as follows:

A.    Declare that Dwelling Blocks is the alter ego of the Employee Defendants and hold Employee Defendants jointly and severally liable for the debts and obligations of Dwelling Blocks to Plaintiffs;

B.    Declare that AutomationRE (U.S.) Inc. is the alter ego of the Employee Defendants and hold Employee Defendants jointly and severally liable for the debts and obligations of AutomationRE (U.S.) Inc. to Plaintiffs;

C.    Declare that AutomationRE Inc. is the alter ego of the Employee Defendants and hold Employee Defendants jointly and severally liable for the debts and obligations of AutomationRE Inc. to Plaintiffs.

D.    Enter a verdict and judgment in favor of Plaintiffs on all counts in the Complaint;

E.    Enter an order immediately and permanently enjoining Dwelling Blocks, LLC, AutomationRE (U.S.) Inc., AutomationRE Inc., their officers, agents, servants, employees, companies and attorneys, and any persons or entities acting in concert or participation with Dwelling Blocks, LLC, AutomationRE (U.S.) Inc., or AutomationRE Inc. from directly or indirectly:

(i) Using or divulging to any person or entity, any of Plaintiffs' Trade Secrets at any time;

(ii) Using or divulging to any person any of Plaintiffs' Trade Secrets to compete with Plaintiffs or to solicit business from any customer or potential customer of Plaintiffs' at any time;

(iii) Using, destroying, disposing of, disseminating, altering, or disclosing any information, files, Trade Secrets, "Confidential Information" or property in Defendants' possession, custody, or control belonging to Plaintiffs or copied, duplicated, recorded, or otherwise taken from Plaintiffs or any of Plaintiffs'

subsidiaries or affiliates, including but not limited to, information stored on computers, external hard drives, and/or portable storage devices at any time (including but not limited to any documents, correspondences, emails, flash drives, thumb drives, cloud storage, and/or USB devices);

(iv) Destroying, disposing of, disseminating, altering, or disclosing any document or information that in any way relates to the allegations in this suit, including but not limited to, any computers, external hard drives, and/or portable storage devices (including but not limited to any documents, correspondences, emails, flash drives, thumb drives, cloud storage, and/or USB devices);

(v) Using, destroying, disposing of, disseminating, altering, or disclosing any documents or information that evidences or reflects, or is in any way related or connected to the misappropriation or use by Dwelling Blocks or its affiliates of any property or information belonging to or copied, duplicated, recorded, or otherwise taken from Plaintiffs, including its subsidiaries or affiliates at any time;

(vi) Disclosing (a) any and all "Confidential Information," whether written or oral, relating to Plaintiffs pursuant to Marty Haldane's breach of the Share Purchase Agreement (b) any and all "Confidential Information," whether written or oral relating to Plaintiffs pursuant to Employee Defendants' breaches of their employment agreements; and

(vii) Accessing Plaintiffs' Protected Network or Plaintiffs' computer controlled by Dial for any purpose.

F.      Enter an order requiring Defendants Dwelling Blocks LLC, AutomationRE Inc. and Automation RE (U.S.) Inc., their officers, agents, servants, employees, and attorneys, and all those in active concert or participation with them, to deliver to counsel for Plaintiffs all documents taken from Plaintiffs or files containing any information belonging or related to Plaintiffs, including all copies of any document and/or information that Defendants have provided to, or used for the benefit of Dwelling Blocks;

G.      Enter an order immediately and permanently enjoining Defendants, their agents, servants, employees, attorneys, successors or assigns, and all persons, firms and corporations acting in concert with them, from using, importing, marketing, distributing, offering for sale, or selling the Knock-Off Software, and from otherwise directly or indirectly infringing Anow U.S.'s copyrights and/or the Asserted Patent, including but not limited to, reproducing, distributing, creating derivative works based upon publicly performing or publicly displaying any of Anow U.S.'s computer program and/or the Knock-Off Software;

H.      Enter an order requiring that Defendants provide evidence that is sufficient to conclusively establish their full compliance with the terms set forth above;

I.      Entering judgment for Anow U.S. against Defendants for statutory damages based upon Defendants' willful acts of infringement pursuant to the Copyright Act, 17 U.S.C. § 101 et seq., and entering judgment for Plaintiffs against Defendants for misappropriation pursuant to the Defend Trade Secrets Act, 18 U.S.C. § 1836(b);

J.      Award Plaintiffs actual damages and/or statutory damages against Defendants pursuant to 17 U.S. Code § 1203;

K.      Award Plaintiffs costs and disbursements of this action, including reasonable attorney's fees and costs pursuant to 17 U.S.C. § 505 and 18 U.S.C. § 1836(b)(3)(D);

L.      Adjudge that Defendants infringe one or more claims of the Asserted Patent;

M.      Award Plaintiffs damages in an amount adequate to compensate Plaintiffs for Defendants' infringement of one or more claims of the Asserted Patent, but in no event less than a reasonable royalty under 35 U.S.C. § 284;

N.      Award enhanced damages pursuant to 35 U.S.C. § 284;

O.      Enter an order finding that this is an exceptional case and awarding Plaintiffs their reasonable attorneys' fees pursuant to 35 U.S.C. § 285;

P.      Award Plaintiffs pre-judgment and post-judgment interest to the full extent allowed under the law, as well as Plaintiffs' costs;

Q.      Award Plaintiffs punitive and exemplary damages in an amount to be determined at trial;

R.      Award Plaintiffs all costs and attorneys' fees it incurs in the prosecution of this lawsuit; and

S.      Award such other relief, including equitable relief, as the Court may deem appropriate and just under the circumstances.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury on all issues so triable.


POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Marisa B. Miller                    By:  */s/ Philip A. Rovner*
Jesse A. Salen                          Philip A. Rovner (#3215)
Sofya Asatryan                          Nicole K. Pedi (#6236)
SHEPPARD, MULLIN, RICHTER &             Hercules Plaza
HAMPTON LLP                             P.O. Box 951
12275 El Camino Real, Suite 100         Wilmington, DE 19899
San Diego, California 92130-4092        (302) 984-6000
(858) 720-8900                          provner@potteranderson.com
                                        npedi@potteranderson.com

Bradley C. Graveline
SHEPPARD, MULLIN, RICHTER &         *Attorneys for Plaintiffs*
HAMPTON LLP
321 N. Clark St., Suite 3100
Chicago, Illinois  60654
(312) 499-6316

July 10, 2025