# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

VOXTUR ANALYTICS CORP., an Ontario ⟩
corporation (Canada), APPRAISERS NOW, LTD., ⟩
an Alberta corporation (Canada) and ⟩
APPRAISERS NOW US, LLC, a Delaware limited ⟩
liability company, ⟩
                         ⟩
             Plaintiffs, ⟩       Civil Action No. 25-742-GBW-SRF
                         ⟩
    v. ⟩
                         ⟩
MARTY HALDANE, an individual; ⟩
AUTOMATIONRE INC., an Alberta corporation ⟩
(Canada), AUTOMATIONRE (U.S.) INC., a ⟩
Delaware corporation; DWELLING BLOCKS, ⟩
LLC, a Delaware limited liability company; ⟩
VIACHESLAV MEDNIKOV, an individual; ⟩
RYAN DIAL, an individual; OLENA ⟩
OVCHARENKO, an individual; and DOES 1 ⟩
through 10, ⟩
                         ⟩
             Defendants. ⟩

## REPORT AND RECOMMENDATION

Presently before the court in this civil action are the following motions: (1) a motion to dismiss the first amended complaint ("FAC") for *forum non conveniens* and failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), filed by defendants AutomationRE, Inc., AutomationRE (U.S.) Inc. ("AutomationRE (U.S.)"), Marty Haldane, Viacheslav Mednikov, Dwelling Blocks, LLC ("Dwelling Blocks"), Ryan Dial, and Olena Ovcharenko (collectively, "Defendants"), (D.I. 84);[1] and (2) Reggora, Inc.'s motion to dismiss AutomationRE (U.S.)'s counterclaims and for an award of attorney's fees and expenses under 10

---

[1] The briefing associated with the pending motion to dismiss for failure to state a claim and *forum non conveniens* is found at D.I. 85, D.I. 116, and D.I. 124.

*Del. C.* § 6010(a)(1), (D.I. 165).[2] For the following reasons, I recommend that the court DENY Defendants' motion to dismiss for *forum non conveniens*, GRANT-IN-PART Defendants' motion to dismiss, GRANT Reggora's motion to dismiss, and DENY Reggora's request for attorneys' fees and expenses.

## I.    BACKGROUND

This case concerns allegations that Defendants engaged in a scheme to copy the source code and steal the trade secrets of plaintiffs Voxtur Analytics Corp. ("Voxtur"), Appraisers Now, Ltd. ("Anow Canada"), and Appraisers Now US, LLC ("Anow US;" collectively, "Plaintiffs") so that Defendants could sell their own "knock-off" appraisal management software platform. (D.I. 25 at ¶¶ 1-14)

Haldane founded Anow Canada in 2011 for purposes of developing an appraisal management software platform for real estate appraisers and brokers called the Anow Software as a Service Appraisal Product (the "Anow Software"). (*Id.* at ¶¶ 2, 33) Haldane, Mednikov, Dial, and Ovcharenko (collectively, the "Employee Defendants") worked for Anow Canada to develop the Anow Software, which is protected by U.S. Copyright Reg. No. TX 9-502-490 and U.S. Patent No. 11,631,058 ("the '058 patent"). (*Id.* at ¶¶ 3-4, 38-39, 64, 68, 71) Plaintiffs claim the copyrighted material includes source code, specifications, documentation, and other content. (*Id.* at ¶ 3) In addition, Plaintiffs claim patent protection under the '058 patent, which is generally directed to methods and systems for scheduling real estate appraisal inspections using an automatic selection process that selects an appraisal inspection performer based on geography. (*Id.* at ¶ 4)

---

[2] The briefing and filings associated with Reggora's pending motion to dismiss are found at D.I. 166, D.I. 167, D.I. 168, D.I. 171, D.I. 172, D.I. 173, and D.I. 177.

On March 30, 2021, Voxtur acquired Anow Canada from Haldane for $39 million Canadian[3] in a Share Purchase Agreement ("SPA") governed by Canadian law. (*Id.* at ¶¶ 5, 53) Haldane continued to work for Voxtur after the sale in accordance with the terms of a Non-Competition, Non-Solicitation, and Confidentiality Agreement (the "Restrictive Agreement"), which was a required covenant to the SPA. (*Id.* at ¶¶ 5, 55) Under the Restrictive Agreement, Haldane could not compete with Plaintiffs, solicit customers, or solicit employees from Plaintiffs for a period of five years, and he agreed not to disclose Plaintiffs' confidential information. (*Id.* at ¶ 55)

Voxtur formed Anow US on July 29, 2021. (*Id.* at ¶ 33) United Wholesale Mortgage ("UWM"), one of the largest mortgage lenders in the United States, was a key customer of Anow US. (*Id.* at ¶ 36) Anow US and UWM entered into a Master Software as a Service Agreement (the "SaaS Agreement") in which Anow US licensed its software to UWM. (*Id.* at ¶ 230)

Voxtur terminated Haldane's employment in May of 2022 and rehired him in December of 2023. (*Id.* at ¶¶ 70, 74) Haldane resigned from Voxtur on August 30, 2024. (*Id.* at ¶ 6) The FAC alleges that Haldane solicited the other Employee Defendants to develop a workflow management software platform by using Plaintiffs' source code and other trade secrets. (*Id.*) The Employee Defendants founded AutomationRE Inc., AutomationRE (U.S.), and Dwelling Blocks to facilitate the distribution of this "knock-off" software and steal Plaintiffs' customer. (*Id.* at ¶¶ 5, 7-10, 12)

Plaintiffs brought this suit on June 16, 2025. (D.I. 1) On July 10, 2025, Plaintiffs filed the FAC asserting thirteen causes of action for: (1) copyright infringement; (2) violations of the Digital Millennium Copyright Act, 17 U.S.C. § 1201, *et seq.*; (3) misappropriation of trade

---

[3] AutomationRE (U.S.)'s counterclaims allege that the purchase price under the SPA was $30 million Canadian. (D.I. 156 at ¶ 15)

secrets; (4) patent infringement; (5) civil conspiracy; (6) breach of fiduciary duties; (7) aiding and abetting breach of fiduciary duties; (8) tortious interference with contracts; (9) tortious interference with business relations; (10) violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 ("CFAA"); (11) breach of contract against Haldane; (12) breach of contract against Mednikov, Dial, and Ovcharenko; and (13) conversion. (D.I. 25) In a Report and Recommendation issued on February 5, 2026, the court recommended dismissing Count VI for breach of fiduciary duties, Count X for violations of the CFAA, Count XI for breach of the SPA and Restrictive Agreement, Count XII for breach of the employment agreements and company policies, and Count XIII for conversion based on a lack of personal jurisdiction under Rule 12(b)(2). (D.I. 180 at 24) The time for filing objections to the Report and Recommendation has passed, and none were filed.

On November 10, 2025, Plaintiffs initiated insolvency proceedings in the Ontario Superior Court of Justice to restructure and sell themselves. (D.I. 160 at 1, Ex. A) The following day, Plaintiffs filed a Chapter 15 bankruptcy petition for recognition of a foreign proceeding in the United States Bankruptcy Court for the District of Delaware. *See In re Voxtur Analytics Corp., et al.*, Bankr. Case No. 25-11996, D.I. 1 (Bankr. D. Del. Nov. 11, 2025). On November 13, 2025, the Bankruptcy Court entered a provisional order regarding application of the automatic stay under 11 U.S.C. § 362(a), which provides:

> Section 362 of the Bankruptcy Code shall apply with respect to each of the Debtors and the property of each of the Debtors that is within the territorial jurisdiction of the United States . . . [including] the commencement or continuation, including the issuance or employment of process of, any judicial, administrative or any other action or proceeding involving or against the Debtors or their assets or proceeds thereof, or to recover a claim or enforce any judicial, quasi-judicial, regulatory, administrative or other judgment, assessment, order, lien or arbitration award against the Debtors or their assets or proceeds thereof, or to exercise any control over the Debtors' assets, located in the United States except as authorized by the Debtors in writing.

4

(D.I. 162, Ex. A at ¶ 1(b)(i))

## II.    LEGAL STANDARD

Rule 12(b)(6) permits a party to seek dismissal of a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To state a claim upon which relief can be granted pursuant to Rule 12(b)(6), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are not required, the complaint must set forth sufficient factual matter to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). In assessing the plausibility of a claim, the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). A claim is facially plausible when the factual allegations allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 663; *Twombly*, 550 U.S. at 555–56.

The court's determination is not whether the non-moving party "will ultimately prevail," but whether that party is "entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal citations and quotation marks omitted). This "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [the necessary element]." *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at

5

556). "[A] complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Id.* at 231.

## III.    DISCUSSION

### A.    Defendants' Motion to Dismiss

The landscape of this case has changed since Defendants filed their motion to dismiss. First, Plaintiffs filed for bankruptcy in the United States and Canada.  Plaintiff contends that the automatic stay does not apply to Defendants' motion to dismiss because the motion addresses Plaintiffs' affirmative claims against Defendants.  (D.I. 164 at 2)  Consequently, the court may resolve Defendants' motion to dismiss without running afoul of 11 U.S.C. § 362(a).  *See In re Kaiser Aluminum Corp.*, 303 B.R. 299, 303 (D. Del. 2003).

Second, the court issued a Report and Recommendation on Defendants' motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2).  (D.I. 180)  The Report and Recommendation recommended dismissing all claims against AutomationRE Inc. and the Employee Defendants (together, the "Canadian Defendants").  (*Id.* at 2)  Adoption of this recommendation would lead to the dismissal of Counts VI, X, XI, XII, and XIII in their entirety. The deadline for filing objections to the Report and Recommendation expired on February 19, 2026, and none were filed.  Under these circumstances, the court does not address Defendants' arguments for dismissal of Counts VI, X, XI, XII, and XIII in the pending motion to dismiss.

### 1.  *Forum Non Conveniens*

Defendants contend that Counts V, VII, VIII, and IX should be dismissed under the doctrine of *forum non conveniens* because these claims belong in Canada in accordance with the forum selection clauses in several contractual agreements.  (D.I. 85 at 2-3)  The doctrine of *forum non conveniens* "is the proper mechanism for enforcing a forum selection clause that

6

points to a state or foreign forum." *Collins on Behalf of Herself v. Mary Kay, Inc.*, 874 F.3d 176, 180 (3d Cir. 2017). When the parties have a contract that contains a valid forum-selection clause, the clause should be given "controlling weight in all but the most exceptional cases." *Atlantic Marine Constr. Co., Inc. v. U.S. Dist. Ct. for the W. Dist. of Tex.*, 571 U.S. 49, 62 (2013) (internal quotation marks and citations omitted). The party seeking dismissal under the *forum non conveniens* doctrine bears the initial burden of establishing that the claims and parties involved in the suit are subject to the forum-selection clause. *Brit. Telecommunications PLC v. Fortinet Inc.*, 424 F. Supp. 3d 362, 367–68 (D. Del. 2019) (citing *Altvater Gessler-J.A. Baczewski Int'l (USA), Inc. v. Sobieski Destylarnia S.A.*, 572 F.3d 86, 89 (2d Cir. 2009)).

Defendants' *forum non conveniens* arguments focus largely on forum selection clauses included in employment agreements between Plaintiffs and Haldane, Mednikov, Dial, and Ovcharenko. (D.I. 85 at 2-6) In particular, Defendants rely on the forum selection clauses in the SPA and Restrictive Agreement between Haldane and Voxtur. (D.I. 124 at 1-3) As previously stated, the court recommended that Haldane, Mednikov, Dial, and Ovcharenko be dismissed from this action under Rule 12(b)(2), and Defendants did not object to that recommendation. Therefore, the motion to dismiss for *forum non conveniens* is moot to the extent it pertains to claims against Haldane, Mednikov, Dial, and Ovcharenko. Defendants have not met their burden to show that remaining defendants Dwelling Blocks and AutomationRE (U.S.) are subject to any forum selection clause or that these Delaware entities would be subject to jurisdiction in Canada. Consequently, I recommend that the court DENY Defendants' motion to dismiss for *forum non conveniens*.

7

## 2. Failure to State a Claim

### a. Count II – Violation of Digital Millenium Copyright Act ("DMCA")

Count II of the FAC alleges that Defendants violated 17 U.S.C. §§ 1201(a), 1202(a), and 1202(b), which place restrictions on the removal, alteration, and/or distribution of copyright management information ("CMI"). (D.I. 25 at ¶¶ 160-68) Defendants contend that Count II should be dismissed for four reasons. The court addresses each in turn:

| | ALLEGED DEFICIENCY | PLEADED ALLEGATION(S) | RECOMMENDED OUTCOME |
|---|---|---|---|
| 1 | The FAC does not allege that Defendants provided their own false CMI under Section 1202(a) after removing Plaintiffs' CMI. (D.I. 85 at 6) | "[T]he Knock-Off Software's derivative code did not include headers indicating Anow U.S.'s authorship and ownership of the copyright in the Dwelling Blocks code; Defendants therefore provided false CMI[.]" (D.I. 25 at ¶ 163)<br><br>"Defendants distributed the Knock-Off Software containing false, removed, and altered CMI for the entire duration of time that they maintained the Dwelling Blocks source code repository online." (*Id.* at ¶ 165)<br><br>"Defendants . . . knowingly and intentionally provided and distributed code containing false CMI[.]" (*Id.* at ¶ 166) | DENY the motion to dismiss. *See Splunk Inc. v. Cribl, Inc.*, 662 F. Supp. 3d 1029, 1054 (N.D. Cal. 2023) (denying motion to dismiss DMCA claim under Section 1202(a) because the complaint alleged the defendant removed authorship and ownership information from the derived files posted on his personal page). |
| 2 | The FAC pleads no facts showing that Defendants "removed or altered" CMI under Section 1202(b)(1) and does not allege that Defendants made an identical copy of Anow U.S.'s work. (D.I. 85 at 7-8) | "Defendants created the Dwelling Blocks Knock-Off Software by copying copyrighted Anow U.S. source code, which contained Anow U.S. copyright headers indicating authorship and ownership. . . . Defendants . . . intentionally removed or altered CMI in creating the Dwelling Blocks code, without the | DENY the motion to dismiss. Defendants cite no binding authority supporting their position that the "Knock-Off Software" must be identical to the copyrighted software. The court is persuaded by authority holding that "the definition of 'copies' lacks any requirement for an |

8

| | | | |
|---|---|---|---|
| | | authority of Anow U.S." (D.I. 25 at ¶ 163)<br><br>"Defendants knowingly and intentionally removed or altered the CMI . . . knowing that the CMI was removed or altered without the authority of Anow U.S." (*Id.* at ¶ 166) | identical copy" and includes "more than just the original work." *ADR Int'l Ltd. v. Inst. for Supply Mgmt. Inc.*, 667 F. Supp. 3d 411, 427 (S.D. Tex. 2023). |
| 3 | The FAC pleads no facts showing that Defendants "removed or altered" CMI under Section 1202(b)(3). (D.I. 85 at 8) | "Defendants created the Dwelling Blocks Knock-Off Software by copying copyrighted Anow U.S. source code, which contained Anow U.S. copyright headers indicating authorship and ownership. . . . Defendants . . . intentionally removed or altered CMI in creating the Dwelling Blocks code, without the authority of Anow U.S." (D.I. 25 at ¶ 163)<br><br>"Defendants knowingly and intentionally removed or altered the CMI . . . knowing that the CMI was removed or altered without the authority of Anow U.S." (*Id.* at ¶ 166) | DENY the motion to dismiss. Defendants do not explain how the pleaded allegations are deficient. |
| 4 | The FAC fails to plead that Defendants circumvented Plaintiffs' technological measures without authority under Section 1201(a). Instead, the FAC alleges Defendants accessed Plaintiffs' source code during their employment. (D.I. 85 at 8-9) | "Anow U.S. employs many technological measures to effectively control access to its copyright-protected software, including, but not limited to, software password protections." (D.I. 25 at ¶ 164)<br><br>"[D]uring their employment, Employee Defendants intentionally accessed Plaintiffs' Protected Network and downloaded Plaintiffs' Trade Secrets from Plaintiffs' Protected Network to Employee Defendants' personal computers[.]" (*Id.* at ¶ 47) | GRANT the motion to dismiss the DMCA claim pursuant to 17 U.S.C. § 1201(a). Under the statute, "circumvent a technological measure" means "to descramble a scrambled work, to decrypt an encrypted work, or otherwise to avoid, bypass, remove, deactivate, or impair a technological measure, without the authority of the copyright owner[.]" 17 U.S.C. § 1201(a)(3)(A). Use of an employee username and password to gain access |

| | | "After Employee Defendants' employment with Plaintiffs ended, Plaintiffs disabled their login credentials for Plaintiffs' Protected Network so the Employee Defendants could no longer access files and information from Plaintiffs' Protected Network." (*Id.* at ¶ 49) | does not constitute "circumvention" of technological measures under the DMCA. *See Flagstone Island Gardens, L.L.C. v. Ser*, 2011 WL 13223685, at *3 (S.D. Fla. Sept. 13, 2011) (citing cases). Here, the FAC does not allege that Defendants accessed Plaintiffs' protected network after their employment. |

Based on the foregoing analysis, I recommend that the court GRANT Defendants' motion to dismiss Count II to the extent that Plaintiffs allege violations of 17 U.S.C. § 1201(a). (D.I. 25 at ¶ 167) I recommend that the court DENY Defendants' motion to dismiss Count II in all other respects.

### b. Count III – Trade Secret Misappropriation

To state a claim for trade secret misappropriation under the Defend Trade Secrets Act ("DTSA"), the plaintiff must allege: "(1) the existence of a trade secret, defined generally as information with independent economic value that the owner has taken reasonable measures to keep secret, 18 U.S.C. § 1839(3); (2) that is related to a product or service used in, or intended for use in, interstate or foreign commerce[;] and (3) the misappropriation of that trade secret[.]" *Oakwood Labs. LLC v. Thanoo*, 999 F.3d 892, 905 (3d Cir. 2021) (internal quotation marks and citations omitted). At the pleading stage,

> the information alleged to be a misappropriated trade secret must be identified with enough specificity to place a defendant on notice of the bases for the claim being made against it. But a plaintiff need not spell out the details of the trade secret to avoid dismissal. Rather, the subject matter of the trade secret must be described with sufficient particularity . . . to permit the defendant to ascertain at least the boundaries within which the secret lies.

*Id.* at 906 (internal citations omitted).

Defendants contend that Count III should be dismissed because Plaintiffs fail to identify their purported trade secrets with the requisite particularity and instead assert eleven broad categories of generic information. (D.I. 85 at 9-10) But the FAC specifically identifies the protocols and source code pertaining to the Anow Software, and it defines the trade secrets by cross-referencing the definition included in the employment agreements of Haldane, Mednikov, Dial, and Ovcharenko. (D.I. 25 at ¶¶ 64, 68, 72, 75, 97) Defendants do not address these pleaded averments in their reply brief. (D.I. 124 at 5-6) Taking the well-pleaded allegations in the FAC as true and viewing them in the light most favorable to Plaintiffs, I recommend that the court DENY Defendants' motion to dismiss Plaintiffs' DTSA claim at Count III of the FAC.

### c.    Count IV – Direct and Indirect Patent Infringement

Liability for direct infringement of a patent arises when a party "without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent." 35 U.S.C. § 271(a). To plead direct infringement, a plaintiff must allege facts "that plausibly indicate that the accused products contain each of the limitations found in the claim." *TMI Sols. LLC v. Bath & Body Works Direct, Inc.*, 2018 WL 4660370, at *9 (D. Del. Sept. 28, 2018) (citations omitted). "[T]he principal objective of the complaint in a patent case is to ensure that the defendant is given fair notice of infringement of the asserted patents." *DSM IP Assets, B.V. v. Honeywell Int'l, Inc.*, 700 F. Supp. 3d 189, 195 (D. Del. 2023) (quoting *Disc Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d 1256, 1260 (Fed. Cir. 2018)).

Defendants contend that the FAC fails to state a claim for direct patent infringement because it simply parrots the language of each claim limitation without indicating where each limitation is found in the accused products. (D.I. 85 at 11-12) A review of the FAC supports

11

Defendants' characterization of the direct infringement claim. The FAC alleges that the "Knock-Off Software" infringes "one or more claims" of U.S. Patent No. 11,631,058 and includes 31 images from the Dwelling Blocks website purportedly demonstrating how each claim element is met. (D.I. 25 at ¶¶ 182, 186) However, these images are not accompanied by any analysis pairing them with associated claim limitations. The FAC then recites each claim limitation and cites all 31 images in support of each limitation. (*Id.* at ¶¶ 187-99) Although Plaintiffs provide more specifics on how each limitation maps to particular images in their answering brief, "[a] party cannot use a brief to remedy deficiencies in the allegations of a complaint." (D.I. 116 at 13); *Greenthread, LLC v. ON Semiconductor Corp.*, C.A. No. 23-443-RGA, 2023 WL 7691632, at *2 (D. Del. Nov. 15, 2023). Because the FAC does not allege how Defendants' accused product satisfies the claim limitations, Plaintiffs have failed to provide Defendants with fair notice of the basis for the direct infringement claim. *Swirlate IP LLC v. Keep Truckin, Inc.*, C.A. No. 20-1283-CFC, 2021 WL 3187571, at *2 (D. Del. July 28, 2021).

For the foregoing reasons, I recommend that the court GRANT Defendants' motion to dismiss Plaintiffs' claim for direct infringement at Count IV of the FAC. Because direct infringement is a prerequisite for indirect infringement, I further recommend that the court GRANT Defendants' motion to dismiss Plaintiffs' claims for indirect infringement. *See Linear Tech. Corp. v. Impala Linear Corp.*, 379 F.3d 1311, 1326 (Fed. Cir. 2004) ("There can be no inducement or contributory infringement without an underlying act of direct infringement.").

### d. Count V – Civil Conspiracy

"Civil conspiracy, standing alone, is not an independent cause of action. There must be some underlying actionable tort by each individual defendant . . . to obtain recovery on a civil conspiracy theory." *Smiley v. Daimler Chrysler*, 538 F. Supp. 2d 711, 718–19 (D. Del. 2008)

12

(citing *Anderson v. Airco, Inc.*, 2004 WL 2827887, at *3 (Del. Super. Ct. Nov. 30, 2004)). Here, Plaintiffs contend that the causes of action for conversion, tortious interference with business relationships, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, and violation of the Computer Fraud and Abuse Act ("CFAA") provide a sufficient legal basis for the civil conspiracy claim. (D.I. 116 at 15) The court recommended dismissing the causes of action for conversion, breach of fiduciary duty, and violation of the CFAA in the Report and Recommendation issued on February 5, 2026. (D.I. 180 at 24) The court further recommends dismissing the causes of action for tortious interference with business relationships and aiding and abetting breach of fiduciary duty for the reasons set forth at Sections III.A.2(e) and (f), *infra*. Because Plaintiffs have failed to adequately plead an underlying tort, I recommend that the court GRANT Defendants' motion to dismiss Count V of the FAC for civil conspiracy.

### e. Count VII – Aiding and Abetting Breach of Fiduciary Duties

To plead a claim for aiding and abetting a breach of fiduciary duty, a plaintiff must allege: "(1) the existence of a fiduciary relationship, (2) a breach of the fiduciary's duty, (3) knowing participation in that breach by the defendants, and (4) damages proximately caused by the breach." *Thermopylae Capital Partners, L.P. v. Simbol, Inc.*, 2016 WL 368170, at *18 (Del. Ch. Jan. 29, 2016). Plaintiffs acknowledge that their claim for aiding and abetting cannot survive independent of the claim for breach of fiduciary duties. (D.I. 116 at 16) The court previously recommended dismissing Plaintiffs' claim for breach of fiduciary duties, and Plaintiffs did not object to the recommendation. Because Plaintiffs' underlying breach of fiduciary duty claim cannot survive, the aiding and abetting claim fails as a matter of law. *See Thermopylae*, 2016 WL 368170, at *18. Consequently, I recommend that the court GRANT Defendants' motion to dismiss Count VII of the FAC.

13

### f.  Counts VIII and IX – Tortious Interference

Counts VIII and IX assert causes of action for tortious interference with a contract and tortious interference with a business relationship, respectively.  (D.I. 25 at ¶¶ 227-47)  To state a claim for tortious interference with a contract under Delaware law, Plaintiffs must allege: "(1) a contract, (2) about which defendant knew and (3) an intentional act that is a significant factor in causing the breach of such contract (4) without justification (5) which causes injury." *Truinject Corp. v. Nestle Skin Health, S.A.*, C.A. No. 19-592-LPS-JLH, 2020 WL 70981, at *16 (D. Del. Jan. 7, 2020) (quoting *Overdrive, Inc. v. Baker & Taylor, Inc.*, 2011 WL 2448209, at *9 (Del. Ch. June 17, 2011)).  Count VIII refers to the employment agreements executed by the Employee Defendants, Haldane's Restrictive Agreement to the SPA, and the SaaS Agreement between Anow U.S. and UWM.  (D.I. 25 at ¶¶ 228-30)

The FAC does not identify any intentional acts by Dwelling Blocks or AutomationRE (U.S.) to cause a breach of these agreements.  Allegations that Defendants "induce[d] each other to breach *their* contractual responsibilities by working in concert to create a substantially similar software" apply only to the Employee Defendants because Dwelling Blocks and AutomationRE (U.S.) had no contractual responsibilities to Plaintiffs under the terms of the employment agreements.  (*Id.* at ¶ 233) (emphasis added).  Moreover, the FAC contains only conclusory allegations that UWM breached the SaaS Agreement due to intentional acts by Dwelling Blocks or AutomationRE (U.S.): "Defendants have induced and continue to induce [UWM] to breach its agreement with Anow U.S. by diverting business from Anow U.S. and causing [UWM] to use Anow U.S.'s software in a manner that is prohibited by the agreement." (*Id.* at ¶ 234)  The FAC does not plausibly allege that diverting UWM's business from Anow U.S. constitutes a breach of the SaaS Agreement, nor does it identify any facts demonstrating how UWM used Anow U.S.'s

14

software in a manner that breached the SaaS Agreement.[4] *See Automated Precision, Inc. v. Pare*, 631 F. Supp. 3d 185, 200–01 (D. Del. 2022) (dismissing tortious interference claims where "[m]any of the Complaint's allegations are mere 'recitals' of the elements of a claim for tortious interference" which the court disregarded). Consequently, I recommend that the court GRANT the motion to dismiss Count VIII of the FAC for tortious interference with a contract.

The elements of a claim for tortious interference with a business relationship include: "(1) the existence of a valid business relationship or expectancy; (2) knowledge of the relationship or expectancy on the part of the interferer; (3) intentional interference which induces or causes a breach or termination of the relationship or expectancy; and (4) resulting damages to the party whose relationship or expectancy has been disrupted." *Truinject*, 2020 WL 70981, at *16 (quoting *Enzo Life Sci., Inc. v. Digene Corp.*, 295 F. Supp. 2d 424, 429 (D. Del. 2003)). Pleaded allegations regarding a prospective business relationship must establish that the third party "was prepared to enter into a business relationship but was dissuaded from doing so by the defendant." *Id.* (internal quotation marks and citations omitted).

The FAC does not plausibly state a claim for tortious interference with Plaintiffs' existing business relationship with UWM. The FAC alleges that "the Employee Defendants solicited business from [UWM], and implemented a scheme to divert Anow's business to Dwelling Blocks's website," "the Employee Defendants began instructing [UWM] not to conduct or substantially decrease business with Anow U.S.[,]" and "the Employee Defendants exploited their position and intimate access" to Plaintiffs' trade secrets "to divert customers to Dwelling Blocks . . . without Plaintiffs' knowledge." (D.I. 25 at ¶¶ 241-43) The FAC does not allege that

---

[4] Plaintiffs contend that the FAC pleads the requisite breach of the SaaS Agreement, but the paragraphs cited in support refer only to the employment agreements and the Restrictive Agreement to the SPA. (D.I. 116 at 17) (citing D.I. 25 at ¶¶ 228-33, 262-64, 270-71).

Dwelling Blocks or AutomationRE (U.S.) intentionally interfered with Plaintiffs' business relationship with UWM.

The FAC similarly fails to state a claim for tortious interference with Plaintiffs' prospective sale to Reggora. Although the FAC alleges that Defendants were aware Voxtur had initiated a sale process with BMO capital markets, it does not identify the potential third party purchaser or allege facts establishing "some basis of a bona fide expectancy" of Plaintiffs' relationship with the third party. (D.I. 25 at ¶¶ 240, 244); *Truinject*, 2020 WL 70981, at *16 (internal citations omitted). The FAC also fails to identify intentional acts by Dwelling Blocks or AutomationRE (U.S.) to interfere with the expectancy. Instead, the underlying factual allegations focus on the Employee Defendants' alleged interference with UWM, theft of Plaintiffs' trade secrets and intellectual property, and breaches of their employment agreements with Plaintiffs. (D.I. 25 at ¶¶ 245-46) For these reasons, I recommend that the court GRANT Defendants' motion to dismiss Count IX of the FAC for tortious interference with business relationships.

### B.    Reggora's Motion to Dismiss

On November 5, 2025, AutomationRE (U.S.) filed its first amended counterclaims against Voxtur, Anow Canada, Anow US, and Reggora, Inc. ("Reggora").[5] (D.I. 156) Reggora now moves to dismiss the counterclaims against it and requests an award of attorneys' fees and expenses. (D.I. 166 at 1) Below is a brief summary of the facts relevant to Reggora's motion to dismiss AutomationRE (U.S.)'s counterclaims.

On April 2, 2025, Voxtur and Reggora allegedly executed a non-binding letter of intent ("LOI") for the sale of Anow in exchange for $23 million. (D.I. 156 at ¶¶ 44, 59) Reggora

---

[5] The parties dispute whether Reggora is a counterclaim defendant or a third-party defendant. (D.I. 166 at 1 n.1; D.I. 172 at 1 n.1) This argument is addressed at Section III.B.1, *infra*.

sought to purchase Anow so it could acquire UWM as a customer. (*Id.*) When UWM announced on April 15, 2025 that it would be doing business with Dwelling Blocks instead of Voxtur, Reggora realized that Anow was losing its biggest customer and accordingly backed out of its purchase of Anow. (*Id.*)

On April 20, 2025, Reggora's CEO, Brian Zitin, texted Voxtur's COO indicating that he had "reason to believe Dwelling Blocks has heavily copied a substantial amount of exact Anow Code." (*Id.* at ¶ 60) Zitin speculated that UWM took Anow's code and modified it while it was escrowed with UWM, and that Dwelling Blocks was an affiliate of UWM to facilitate ownership of the code. (*Id.* at ¶ 63) Zitin asked Voxtur "to bring someone technical to the call and we will walk you through the evidence[.]" (*Id.*)

Reggora authorized Voxtur to rely on Zitin's text messages in the instant litigation. (*Id.* at ¶¶ 62, 66) AutomationRE (U.S.) alleges that Zitin knew or should have known his statements were false because neither he nor Reggora had access to Voxtur's or Dwelling Blocks's source code, and he knew Dwelling Blocks was not affiliated with UWM. (*Id.* at ¶ 64) According to AutomationRE (U.S.), Zitin and Reggora intended to use Zitin's allegations to harm Dwelling Blocks's business and regain UWM as a customer. (*Id.* at ¶¶ 65-66)

Beginning in June of 2025, Mariusz Skonieczny, a Voxtur spokesperson and paid promoter, began posting videos about the instant litigation on YouTube that disseminated the allegedly false content in Zitin's text messages to a public audience. (*Id.* at ¶¶ 74-78) AutomationRE (U.S.) alleges that Skonieczny did so at the direction of Voxtur. (*Id.* at ¶ 80) Skonieczny claimed that Dwelling Blocks stole Anow's biggest customer and accused that customer of being involved in the theft of Anow's source code. (*Id.*) He also asserted that

"Voxtur was in the middle of selling all or part of Anow and then the potential buyer looked at the copying of the code and then they walked away from the deal." (*Id.* at ¶ 81)

### 1. Alleged Violation of Rule 14

Reggora contends that all the counterclaims brought against it should be dismissed as procedurally improper under Rule 14, which provides that "[a] defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." (D.I. 166 at 19) (quoting Fed. R. Civ. P. 14(a)(1)). Because the claims against Reggora do not seek to hold Reggora accountable for AutomationRE (U.S.)'s liability to Plaintiffs, AutomationRE (U.S.) argues that dismissal is warranted. (*Id.* at 19-20) AutomationRE (U.S.) does not challenge Reggora's assertion that the counterclaims do not satisfy Rule 14. Instead, AutomationRE (U.S.) alleges that the counterclaims are procedurally proper under Rule 13(h). (D.I. 172 at 18-19)

Rule 13(h) provides that a non-party may be joined to a counterclaim as a counterclaim defendant under Rules 19 and 20, which govern compulsory and permissive joinder, respectively. Fed. R. Civ. P. 13(h). Under Rule 13(h), the court may only join an additional person to adjudicate a counterclaim that is already before the court or is being asserted at the same time the addition of the nonparty is sought. As a result, a counterclaim brought under Rule 13(h) must involve at least one existing party and may not be directed solely against a person who is not already a party to the action. *F.D.I.C. v. Bathgate*, 27 F.3d 850, 873–74 (3d Cir. 1994) (quoting C.A. Wright, A. Miller, M.K. Kane, *Federal Practice and Procedure*, Vol. 6, § 1435, at 270–71 (1990)); *see also Piazza Family Trust II v. Ciarrocchi*, 2017 WL 11635040, at *1 n.1 (E.D. Pa. Aug. 29, 2017). "In contrast, third-party defendants are non-parties against whom a defending party serves a complaint on the basis that the third-party defendant 'is or may

18

be liable to [a defending party/third-party plaintiff] for all or part of the claim against [the defending/third-party plaintiff].' " *LaurelWood Care Center, LLC v. Pavlosky*, 2018 WL 623584, at *2 n.3 (W.D. Pa. Jan. 29, 2018) (quoting Fed. R. Civ. P. 14(a)(1)).

I recommend that the court GRANT Reggora's motion to dismiss Counterclaim VI, which is brought only against Reggora. (D.I. 156 at ¶¶ 155-65) AutomationRE (U.S.) confirms that this claim is brought under Rule 13(h), as opposed to Rule 14. (D.I. 172 at 18-19) However, a counterclaim under Rule 13(h) may only be brought against a non-party if it also involves at least one existing party. *See Bathgate*, 27 F.3d at 873-74. Because Counterclaim VI is brought only against Reggora and does not also involve an existing party, dismissal is warranted. *See Nordetek Env't, Inc. v. RDP Techs., Inc.*, 2011 WL 13227707, at *3 (E.D. Pa. June 10, 2011) (recognizing "it is true that Fed. R. Civ. P. 13(h) does not permit a defendant to bring a counterclaim that solely targets a nonparty[.]"). The court need not reach Reggora's arguments for dismissal of Counterclaim VI for failure to state a claim under Rule 12(b)(6).

Counterclaims I and III are brought against Reggora, Voxtur, and Anow Canada. (D.I. 156 at ¶¶ 91-99, 119-25) Reggora contends that the allegations against it within these counterclaims should be separated from the averments against Voxtur and Anow Canada, and they are therefore improper under Rule 13(h). (D.I. 177 at 9-10) The authority cited by Reggora in support of this argument does not address the treatment of a counterclaim under Rule 13(h). *See Isaac v. Politico LLC*, 346 A.3d 103, 126 n.110 (Del. 2025) (explaining how to apply the statute of limitations when multiple publications of private or defamatory material occur). Because AutomationRE (U.S.) sought to add Reggora as an additional counterclaim defendant to the counterclaims brought against Voxtur and Anow Canada, and because the allegations against Reggora arise out of the same transaction or occurrence as the claims against Voxtur and Anow

19

Canada, Reggora may be properly joined under Rule 13(h). *See Bathgate*, 27 F.3d at 873 (finding that Rule 13(h) authorizes the addition of nonparties to a counterclaim so long as an existing party in the original action is named in the counterclaim). Consequently, I recommend that the court DENY Reggora's procedural argument for dismissal of Counterclaims I and III under Rule 14. The court turns next to consideration of whether these counterclaims should be dismissed under Rule 12(b)(6) for failure to state a claim.

### 2. Counterclaim I: Defamation

To state a claim for defamation, AutomationRE (U.S.)'s counterclaim must allege: "(1) a defamatory communication; (2) publication; (3) reference to the plaintiff; (4) the third party's understanding of the communication's defamatory character; and (5) injury." *Kugmeh v. Uber Techs.*, C.A. No. 23-600-CFC, 2024 WL 166445, at *2 (D. Del. Jan. 16, 2024). "A communication is defamatory when it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Cousins v. Goodier*, 283 A.3d 1140, 1148 (Del. 2022) (internal citations and quotation marks omitted). Statements on matters of public concern "can support a defamation claim when they can reasonably be interpreted as stating or implying defamatory facts about an individual that are provably false." *Id.*

I recommend that the court GRANT Reggora's motion to dismiss Counterclaim I. The pleading alleges that Zitin's text messages to Voxtur in April of 2025 were defamatory communications. (D.I. 156 at ¶¶ 60, 63) In those messages, Zitin told Voxtur "[w]e have reason to believe 'Dwelling Blocks' has heavily copied a substantial amount of exact Anow code," and "[o]ur best guess is that . . . [t]hey have taken the code and been working to modify it as their

20

own[.]" (*Id.*) For purposes of this analysis, the court assumes without deciding that these statements are defamatory.

The pleading does not allege that AutomationRE (U.S.) was injured due to Zitin's communication of these messages to Voxtur. Instead, AutomationRE (U.S.) avers that Reggora "expressly authorized Voxtur to rely on Mr. Zitin's text as it saw fit[,]"[6] and Voxtur then relied on Reggora's assertions in the instant litigation and in video clips on Skonieczny's YouTube channel. (*Id.* at ¶¶ 62, 65-68, 74, 80) The use of Zitin's text messages in this litigation cannot form the basis of the defamation claim because the absolute litigation privilege "protects from actions for defamation statements of judges, parties, witnesses and attorneys offered in the course of judicial proceedings[.]" *Barker v. Huang*, 610 A.2d 1341, 1349 (Del. 1992); *see also Whittington v. Whittington*, 2024 WL 490807, at * (Del. Super. Ct. Feb. 8, 2024) (recognizing that the absolute litigation privilege applies to statements made during judicial proceedings and covers communications made in advance of anticipated litigation).

Moreover, a review of Skonieczny's YouTube clips does not support AutomationRE (U.S.)'s position that Skonieczny disclosed allegations from Reggora's texts that were not previously published in Voxtur's complaint. (D.I. 168, Exs. A-B) In the June 28, 2025 clip, Skonieczny specifically describes the content of Voxtur's original complaint in the instant litigation, with the complaint displayed in the background.[7] (*Id.*, Ex. A) His allegations that

---

[6] The parties dispute whether Reggora's express authorization for Voxtur to use the content of Zitin's text messages is sufficient to constitute an affirmative action to disseminate the allegedly false statements. (D.I. 166 at 10; D.I. 172 at 13) The court need not address this dispute to resolve the pending motion.

[7] The YouTube video from September 9, 2025 focuses on Voxtur's financial problems. (D.I. 168, Ex. B) Skonieczny describes Haldane's alleged theft of UWM as a client, but he does not discuss Anow's source code and he emphasizes that his statements are "all in legal documents." (*Id.*) There is no apparent connection between the content of Skonieczny's September 9, 2025 YouTube video and the content of Zitin's text messages.

21

Haldane stole Anow's source code to make "knock-off" software for Dwelling Blocks are consistent with averments in the complaint. (D.I. 1 at ¶¶ 8, 91-92, 101-02)  Contrary to AutomationRE (U.S.)'s representation, Skonieczny did not suggest an affiliation between Dwelling Blocks and UWM as Zitin did in his text messages. (D.I. 172 at 14)  There is no basis to infer that Skonieczny disclosed the allegedly defamatory content of Zitin's text messages in his YouTube videos.  Consequently, I recommend that the court GRANT Reggora's motion to dismiss Counterclaim I.

### 3. Counterclaim III: Trade Libel

Reggora also moves to dismiss AutomationRE (U.S.)'s counterclaim for trade libel. (D.I. 166 at 16-17)  The parties do not agree on the applicable legal standard for a trade libel claim under Delaware law.  Citing the standard applied by the Pennsylvania Supreme Court, AutomationRE (U.S.) contends that the elements of trade libel are as follows: "(1) the statement is false; (2) the publisher either intends the publication to cause pecuniary loss or reasonably should recognize that publication will result in pecuniary loss; (3) pecuniary loss does in fact result; and (4) the publisher either knows that the statement is false or acts in reckless disregard of its truth or falsity."[8] (D.I. 172 at 15)  Reggora maintains that trade libel also requires a showing of reliance and special damages. (D.I. 166 at 16; D.I. 177 at 6)

Case authority from this district supports Reggora's position that the elements of trade libel are equivalent to "injurious falsehood" and include reliance and special damages. *See*

---

[8] AutomationRE (U.S.) quotes this standard from *Incyte Corp. v. Flexus Biosciences, Inc.*, 2017 WL 7803923, at *7 (Del. Super. Ct. Nov. 1, 2017), which in turn quotes the elements from the Pennsylvania Supreme Court's decision in *Pro Golf Manufacturing, Inc. v. Tribune Review Newspaper Co.*, 809 A.2d 243, 246 (Pa. 2002).  In *Incyte*, the Delaware Superior Court recognized that "[n]o Delaware case defines the elements of trade libel[,]" and "it is somewhat unclear what the elements of trade libel are under Delaware law[.]" *Incyte*, 2017 WL 7803923, at *6-7.

*Ryanair DAC v. Booking Holdings Inc.*, C.A. No. 20-1191-WCB, 2023 WL 2867476, at *8-9 (D. Del. Apr. 7, 2023) (citing *In re Nat'l Collegiate Student Loan Trusts Litig.*, 2020 WL 3960334, at *4 (Del. Ch. July 13, 2020) and Restatement (Second) of Torts § 623A (1977)).  Reggora contends that AutomationRE (U.S.) fails to plead that anyone relied on the alleged falsehoods in Skonieczny's YouTube videos.  (D.I. 166 at 17)  AutomationRE (U.S.) responds that reliance is not an element of trade libel, without citing any portion of the pleading that demonstrates reliance.  (D.I. 172 at 15)  Therefore, I recommend that the court GRANT Reggora's motion to dismiss Counterclaim III.

### 4. Attorneys' Fees and Expenses

Finally, Reggora requests an award of fees and expenses under the Delaware Uniform Public Expression Protection Act, 10 *Del. C.* § 6010(a)(1) ("DUPEPA"), which provides for mandatory fee shifting on a motion to dismiss brought under 10 *Del. C.* § 6003 if the moving party prevails on the motion.  (D.I. 166 at 20)  I recommend that the court DENY Reggora's motion for attorneys' fees and expenses because Reggora brought the instant motion under Rule 12(b)(6), as opposed to 10 *Del. C.* § 6003.  Because the DUPEPA "does not purport to make attorney's fees available to parties who obtain dismissal by other means, such as under Federal Rule [of Civil Procedure] 12(b)(6)[,]" attorneys' fees are not available to Reggora in this case. *Abbas v. Foreign Policy Grp., LLC*, 783 F.3d 1328, 1337 n.5 (D.D.C. 2015).

## IV.    CONCLUSION

For the foregoing reasons, I recommend that the court DENY Defendants' motion to dismiss for *forum non conveniens* and GRANT-IN-PART Defendants' motion to dismiss the FAC under Rule 12(b)(6) (D.I. 84) as follows:

| COUNT | CLAIM | RECOMMENDED OUTCOME |
|-------|-------|---------------------|
| Count II | Violations of Digital Millennium Copyright Act under 17 U.S.C. § 1201, *et seq.* | GRANT-IN-PART: GRANT with respect to claim brought under 17 U.S.C. § 1201(a). DENY with respect to claims brought under 17 U.S.C. § 1202. |
| Count III | Trade Secret Misappropriation under the Defend Trade Secrets Act, 18 U.S.C. § 1836 | DENY |
| Count IV | Direct and Indirect Patent Infringement under 35 U.S.C. § 271 | GRANT Rule 12(b)(6) motion to dismiss and DISMISS Count IV without prejudice |
| Count V | Civil Conspiracy | GRANT Rule 12(b)(6) motion to dismiss and DISMISS Count V without prejudice |
| Count VII | Aiding and Abetting Breach of Fiduciary Duties | GRANT Rule 12(b)(6) motion to dismiss and DISMISS Count VII without prejudice |
| Count VIII | Tortious Interference with Contracts | GRANT Rule 12(b)(6) motion to dismiss and DISMISS Count VIII without prejudice |
| Count IX | Tortious Interference with Business Relationships | GRANT Rule 12(b)(6) motion to dismiss and DISMISS Count IX without prejudice |

I further recommend that the court GRANT Reggora's motion to dismiss under Rule 12(b)(6) and DENY Reggora's request for attorneys' fees and expenses under 10 *Del. C.* § 6010(a)(1). (D.I. 165)

Given that the court has relied upon material that technically remains under seal, the court is releasing this Report and Recommendation under seal, pending review by the parties. In the unlikely event that the parties believe that certain material in this Report and Recommendation should be redacted, the parties shall jointly submit a proposed redacted version by no later than **March 24, 2026**, for review by the court, along with a motion supported by a declaration that includes a clear, factually detailed explanation as to why disclosure of any proposed redacted material would "work a clearly defined and serious injury to the party seeking

24

closure." *See In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, 924 F.3d 662, 672 (3d Cir. 2019) (quoting *Miller v. Ind. Hosp.*, 16 F.3d 549, 551 (3d Cir. 1994) (internal quotation marks omitted)). If the parties do not file a proposed redacted version and corresponding motion, or if the court determines the motion lacks a meritorious basis, the documents will be unsealed within fourteen (14) days of the date the Report and Recommendation issued.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The objections and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated March 7, 2022, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: March 17, 2026

_____
Sherry R. Fallon
UNITED STATES MAGISTRATE JUDGE

25